[Opinion adopted June 22, 1883.]

W. C. FOREMAN ET AL. v. W. L. MERONEY ET AL.

(Case No. 5027.)

1. HOMESTEAD — ABANDONMENT.— The children of the father by a first marriage, who after his death ceased to be members of the family of his wife by a second marriage, cannot enforce partition of a homestead acquired by the separate means of their father, and which was set aside as homestead by the county court for the widow and children of the second marriage, who afterwards left it and removed to another county, with the intention on the part of the widow and a second husband, whom she had married, never to return to it unless compelled by poverty or unavoidable circumstances. Title to no other home had been acquired.

2. SAME.— It is not necessary to the existence of the homestead right that the family should remain on the land. "To use and occupy" the homestead, within the meaning of article 16, section 52, of the constitution, does not require a residence upon it. When left, either from necessity or convenience, by the family, no matter for how long a time, so long as it contributes to the support of the family it remains the homestead until title is acquired to another home, and which is used and occupied as such.

3. CASE DISTINGUISHED.— This case distinguished from Pressley v. Robinson, 57 Tex., 453.

APPEAL from Collin. Tried below before J. M. Pearson, Esq., Special Judge.

The following statement of appellants' counsel presents the case:

This suit was brought by appellants against appellees for partition of land belonging to estate of D. C. Foreman. Appellee Lucetta Meroney claimed the right, as surviving wife of D. C. Foreman, to use and occupy the land as the homestead of herself and D. C. Foreman, and that it had been set apart to her by the county court of Collin county. Reply, abandonment, and that Mrs. Meroney had elected to no longer use and occupy the land as a homestead.

The judge filed special findings, which were incorporated in the judgment, and which are as follows:

1st. That D. C. Foreman and Mary Ellen Foreman intermarried in Collin county, Texas, on the 16th day of January, 1856.

2d. That the two tracts of land sought to be partitioned in this cause were conveyed to D. C. Foreman after his marriage with Mary E. Howard and during her life-time, and that the entire consideration for each tract of land was the separate property of D. C. Foreman.

3d. That D. C. Foreman and his wife, Mary E. Foreman, resided on said land as their homestead until the death of Mary E. Foreman, which occurred about the year A. D. 1864, and that at her death she left surviving four children, the result of her marriage with D. C. Foreman — W. C. Foreman, Donna Foreman, Abbie Foreman, now Abbie Dunn, and Belle Foreman, now Belle Abernathy.

4th. That after the death of Mary E. Foreman her surviving husband intermarried with Lucetta Howard. There were born to them three children, namely: Ruth Foreman, Swan Foreman and Ellie Foreman.

5th. That the said D. C. Foreman and Lucetta Foreman resided on the land in controversy as their homestead at the date of death of D. C. Foreman.

6th. That D. C. Foreman died on the 19th day of May, 1879, and that administration closed on his estate, and that an order was made in the county court of Collin county, setting apart for the use and benefit of Lucetta Foreman, and for the minors Belle, Donna, Abbie, Ruth, Ellie and Swan Foreman, the homestead of two hundred acres.

7th. That Lucetta Foreman intermarried with defendant W. L. Meroney on the 25th day of November, 1879.

8th. That defendant W. L. Meroney, for a consideration of $1,350, $1,000 of which was cash, and $350 to be paid on a note

given by W. L. Meroney, bought of J. M. Wilcox, on the 1st day of January, 1880, a house and lot in the town of Plano, and received a deed therefor.

9th. That W. L. Meroney and Lucetta Meroney moved to the house and lot bought of J. M. Wilcox, and occupied the same as a home until they afterwards sold it, which was done before the balance of the purchase money was paid. That Belle Foreman, now Belle Abernathy, and Abbie Foreman, now Abbie Dunn, lived with them on the Wilcox place till each of them married. That it was the intention of W. L. Meroney and Lucetta Meroney, after they moved to the Wilcox place, not to return and live on the land in controversy.

10th. That, on the 27th day of September, A. D. 1882, W. L. Meroney and Lucetta Meroney removed from Collin county to Parker county with the expectation to make it their future home, and with no intention to return and live upon the land in controversy, and they expect now never to return to live on the land in controversy unless compelled by poverty or unavoidable circumstances. That they now own no land in Parker county.

11th. That Lucetta Meroney, by her husband, W. L. Meroney, has rented to tenants by the year the land in controversy since 1879, and received rents of the same.

12th. That the reasonable value of the yearly rents of the land in controversy is $3.50 per acre.

13th. That the said Lucetta Meroney has never elected to no longer use or occupy the land in controversy as a homestead.

14th. That the minors Ruth, Swan and Ellie now reside with their mother in Parker county, and that they have no other property or income except their interest in the land in controversy.

The court stated conclusions of law as follows:

1st. That Mrs. Lucetta Meroney has the right to rent the land in controversy, and to appropriate the rents to the use and benefit of herself and her minor children during her natural life, or so long as she remains a citizen of Texas.

2d. That it is not necessary, in order for Mrs. L. Meroney to use or occupy the land in controversy as a homestead, that she should personally live on said land, or that she should have an intent ever to live on said land in person.

3d. That the fact that Mrs. L. Meroney lives in a different county from where the land is situated, and rents said land yearly, does not constitute such an abandonment of the land in controversy as to warrant its partition among the heirs of D. C. Foreman.

Judgment for appellees Meroney and wife.

*Garnett & Muse* and *W. H. Abernathy*, for appellants, cited: Gilliam *v.* Null, 58 Tex., 304; Ayers *v.* Shackey, Tex. L. Rev., vol. 3; Schneider *v.* Bray, Tex. L. Rep., August, 1883; Pressley *v.* Robinson, 57 Tex., 453; Shryock *v.* Latimer, 57 Tex., 674; Evans *v.* Womack, 48 Tex., 230; Iken *v.* Olenick, 42 Tex., 195; Railroad Co. *v.* Winter, 44 Tex., 610; Phillco *v.* Smalley, 23 Tex., 502; Franklin *v.* Coffee, 18 Tex., 413; Methery *v.* Walker, 17 Tex., 597; Thomas *v.* Williams, 50 Tex., 275; Wright *v.* Dunning, 46 Ill., 271; Story on Conflict of Laws, sec. 47; Cross *v.* Everts, 28 Tex., 523; Stewart *v.* Brand, 23 Iowa, 478; Orman *v.* Orman, 26 Iowa, 361; Monk *v.* Capers, 5 Allen, 126; Tyffe *v.* Berry, 18 Iowa, 5; Dunbon *v.* Woodbury, 24 Iowa, 74; Moore *v.* Litman, 43 Ill., 169.

*K. R. Craig*, for appellees.

Delany, J. Com. App.— When D. C. Foreman died he left his wife Lucetta and seven children. Four of these were the children of his first marriage. Three of them were quite young, and the children of the second and surviving wife. The oldest of the children was a son, who seems not to have been a member of the family when the homestead was set apart to them. One of the elder daughters had died before that time; so that the family to whom the homestead was set apart consisted of the second wife Lucetta and her three minor children, together with two daughters of the first marriage. These two daughters afterwards married and withdrew from the family; and now they join their elder brother in a suit for partition of the homestead against their stepmother and the three minors. They say that she has left the place and has no definite purpose of returning to it, unless poverty or necessity shall render it expedient for her to do so. This, they insist, is an abandonment of the homestead, both for herself and her children; and there is nothing to prevent a partition among all the interested parties. There is no dispute about the facts.

The widow has married again, and is living with her husband and children in a different county. She has no definite purpose to return to the homestead at any particular time, and it may so turn out that she will not return to it at all. Does this amount to an abandonment, so as to forfeit the homestead rights of the mother and her children? If so, the court below erred, and the judgment must be reversed. The language of the constitution is as follows (art. 16, sec. 52): " On the death of the husband or wife . . . the homestead . . . shall not be partitioned among the heirs of the deceased during the life-time of the survivor, or so long as the survivor may elect to use or occupy the same as a homestead."

What is the meaning of the words "use or occupy as a homestead?" Are we to understand that the survivor must actually remain upon the land? Certainly not; for the preceding section of the constitution (sec. 51, art. 16) provides that "any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired." Thus the surviving wife might rent the homestead from year to year for many years, and this would be only a temporary renting, because the renting might possibly cease and the occupancy by the family be resumed at the end of any year, as the convenience or comfort of the family might suggest.

The probate court cannot select or provide a homestead adapted to the wants of the surviving family. It can only set apart to them the homestead of the deceased, whether it be a suitable one for them or not. It may happen, as is the case here, that the homestead is the only property of the family, and can be made available to them only by being rented. The mother and little children cannot cultivate the soil, nor can they control and manage the labor necessary for that purpose. And it may happen that, in order to rent it to the best advantage, the dwelling must be temporarily given up to the tenants. Thus the family might — sometimes from necessity, sometimes for convenience — be locally absent from the homestead for years without in any degree affecting their rights. The law is not concerned about the precise locality of the family at any time, but it is concerned that, wherever they may be carried by convenience or chance or misfortune, there shall be a place to which they may return to find the shelter and security of a home.

The homestead, therefore, is not to be likened to prison bounds, within which the family must always remain, but to a sanctuary, to which they may always return. And an abandonment is accomplished, not by going away without any intention of returning at any particular time in the future, but by going away with the definite intention never to return at all.

Let us suppose the case of a surviving widow who is offered by a brother the shelter of his home for the time being. She accepts the invitation, and, together with her children, takes up her residence with him, but nothing is said or thought about the duration of her stay. In fact, however, she remains at her brother's residence for a number of years, simply because the invitation is extended, and her residence there is agreeable to all the parties — the homestead meanwhile being in the hands of tenants. In such a case it is difficult to see how the homestead rights of the mother and children could be affected by their absence, however protracted.

Syllabus.

This case differs materially from the case of Pressley v. Robinson, 57 Tex., 453. There the homestead was the community property of the husband and the first wife, and her interest passed upon his death to the children of the marriage. The second wife had no children. Here the homestead was the separate property of the husband. The second wife with her children has the same interest in the property which was possessed by the first. The plaintiffs are not claiming as the heirs of their mother, but of their father. Gilliam v. Null, 58 Tex., 298.

Appellants, however, insist that the purchase by the second husband of a dwelling a short distance from the farm which had composed the homestead is to be regarded as an abandonment. We do not think so. The rural homestead may consist of more than one tract. Const., art. 16, sec. 51. If the first husband had bought the same place and had removed the family to it, that would not necessarily have worked an abandonment of the homestead. The homestead in this case was set apart to the wife and the minor children. How far the rights of the children might be affected by the acts of their mother we do not think it necessary to inquire.

Something is said in the brief of counsel about a supposed excess in the tract of land over two hundred acres; but that matter is not properly before us. Our opinion is that the judgment should be affirmed.

AFFIRMED.