GIBSON et al. v. PIERCE et al.

(Court of Civil Appeals of Texas. El Paso. March 21, 1912. Rehearing Denied April 17, 1912.)

1. APPEAL AND ERROR (§ 724*)—ASSIGNMENTS OF ERROR—SUFFICIENCY.

An assignment of error is insufficient, where it does not point out with certainty the particular action of the trial court complained of.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2907–3001, 3022; Dec. Dig. § 724.*]

2. TRIAL (§ 350*)—VERDICT—SPECIAL FINDINGS.

Where, in an action to recover land, the question whether the deceased grantor was of unsound mind was directly raised by the pleadings and evidence, its determination was properly submitted to the jury by special issue.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 828–833; Dec. Dig. § 350.*]

3. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—SUPPORTING PROPOSITIONS—SUFFICIENCY.

Where an assignment of error, in an action to recover land sold by a deceased, attacked the submission of a special issue as to

the soundness or unsoundness of the deceased's mind at the time he conveyed as inapplicable to the facts, it was not supported by propositions to the effect that, unless the proof showed that the wife of the deceased was incurably insane at the date of the execution of the deed, the deceased would have no right to convey the homestead, and that a husband may not deprive his wife of her rights in a homestead while she is under a legal incapacity.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

4. APPEAL AND ERROR (§ 742*)—ASSIGNMENT OF ERRORS — SPECIFICATION OF ERRORS — SINGLENESS.

An assignment of error, submitted as a proposition, which complains both that a specific finding is not supported by the evidence, and also that it was reached because a portion of the court's charge was upon the weight of the evidence, will not be considered, because it complains of more than one action of the court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

5. APPEAL AND ERROR (§ 742*)—ASSIGNMENT OF ERRORS—PROPOSITIONS ACCOMPANYING—SUFFICIENCY.

And such assignment is insufficient as a proposition for its multifariousness.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

6. APPEAL AND ERROR (§ 742*)—ASSIGNMENT OF ERRORS—PROPOSITIONS ACCOMPANYING.

An assignment of errors, submitted as a proposition, which complains that a special finding was not sustained by the evidence, is insufficient as a proposition, where it does not show in what respect the answer of the jury was not sustained.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

7. TRIAL (§ 194*)—INSTRUCTIONS—PROVINCE OF COURT AND JURY—WEIGHT OF EVIDENCE.

In an action to recover land claimed to have been a homestead, sold by a husband, and in the conveyance of which the wife did not join, a charge that a husband acting in good faith may select the homestead of the family or abandon one homestead and acquire another, the abandonment and new acquisition taking place whether the new homestead is fully paid for or not, is not a charge on the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

8. APPEAL AND ERROR (§§ 742, 740*)—ASSIGNMENT OF ERRORS—SINGLENESS.

An assignment of error, which submitted as a proposition the impropriety of the findings on five different special issues, embracing four distinct issues of the cause, is insufficient both as an assignment and as a proposition.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3000, 3028; Dec. Dig. §§ 742, 740.*]

9. APPEAL AND ERROR (§ 1068*)—HARMLESS ERROR.

Where, in an action to recover land sold by a husband without his wife joining, the jury found that the land in controversy was not the homestead, a failure of the court to instruct that the husband alone could not alienate the homestead or any part of it during the life of his wife was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig. § 1068.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

**10. Homestead (§ 56\*)—Power to Transfer—Joinder of Wife.**

A husband acting in good faith may choose and select the homestead or abandon one selected and acquire a new one independently of the wishes of his wife.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 81, 82; Dec. Dig. § 56.\*]

**11. Appeal and Error (§ 719\*)—Assignment of Error—Necessity—Fundamental Error.**

A court on appeal will review fundamental error in a judgment apparent on the face of the record, though not assigned or presented in any way.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982, 3490; Dec. Dig. § 719.\*]

**12. Husband and Wife (§ 265\*)—Community Property—Insanity of Wife—Conveyance by Husband—Validity.**

Rev. St. 1895, art. 2221, provides that where a wife becomes insane, leaving a surviving husband and child or children, the husband shall have the exclusive management, control, and disposition of the community property, and the insane wife need not join in conveyances thereof, subject "to the provisions of this chapter." Rev. St. 1895, c. 28, of which article 2221 is part, relates to the administration of community property, and its other articles provide that on the insanity of the wife the right of the husband to the management, control, and disposition of the community property is contingent upon the filing by him of written application for authority to act as a survivor, returning an inventory, etc. A husband, upon the insanity of his wife and her commitment to an insane asylum, mortgaged and conveyed their community property without filing the application, etc., required by statute. *Held*, that the conveyance was void as to the interest of the wife for her failure to join.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 896, 917–924; Dec. Dig. § 265.\*]

Error to District Court, Stephens County; Thomas L. Blanton, Judge.

Action by G. T. Gibson and others against P. P. Pierce and another. From a judgment for defendants, plaintiffs bring error. Reversed and remanded.

D. G. Hunt, of Eastland, and W. P. Sebastian, of Breckenridge, for plaintiffs in error. Sidney L. Samuels, of Ft. Worth, and Stubblefield & Patterson, of Eastland, for defendants in error.

HIGGINS, J. C. I. Pettit and Jane P. Pettit were husband and wife, owning a tract of land containing several hundred acres, in Stephens county. It belonged to the community estate, and the homestead of 200 acres was situate thereon. The family consisted of the husband, wife, and a number of children. On January 21, 1901, the wife was adjudged insane and was sent to a lunatic asylum, where she remained until after the filing of this suit. C. I. Pettit died on March 8, 1908, and this suit was thereafter instituted by the children of C. I. Pettit and Jane P. Pettit to recover the above-mentioned land. In the original suit the wife appeared as a party plaintiff, suing by next friend. Subsequent to filing of the suit she was discharged from the insane asylum, returned to her children, and intervened in the suit, alleging that she had been restored to her reason, and adopted the pleadings of the plaintiffs. The home of C. I. Pettit and his children was upon the land in controversy until the year 1905. Being afflicted with tuberculosis, he then, with some of his children, moved to San Antonio, where he acquired property, and which he owned until August, 1906, when he sold the same, and while he owned it he lived on the same as his home. On October 18, 1906, he acquired property in Guadalupe county, upon which he lived as a home with his children until he sold the same on October 31, 1907. On February 7, 1907, Pettit gave a deed of trust on the land in controversy to secure a note for $1,200; the deed of trust reciting that the property was no part of his homestead, and he having then a home upon which he was living in Guadalupe county, about 12 miles south of the town of Seguin. On May 16, 1907, Pettit conveyed to P. P. Pierce and R. Glasscock the premises so owned by him in Stephens county for a cash consideration of $4,357.50. Glasscock thereafter conveyed his interest in the land to Pierce. When C. I. Pettit left Stephens county, he went to Southern Texas on account of his health, with the intention of making his home in that section of the state. Plaintiffs in their petition alleged the insanity of the wife, and that at the time C. I. Pettit conveyed the land to Pierce and Glasscock he also was of unsound mind and incapable of contracting, which was known to Pierce and Glasscock; also, that they bought the land at a price far below its true value, and that they secured the conveyance from Pettit by means of fraud. It was also alleged that 200 acres of the land in controversy at the time of the conveyance to Pierce and Glasscock was the homestead of C. I. Pettit and his family. The defendant Pierce answered by plea of not guilty, general denial, and special defenses not necessary to detail.

The case was tried before a jury and submitted upon numerous special issues, as follows: "(1) Was C. I. Pettit of sound or unsound mind at the time he executed the deed to Pierce and Glasscock in May, 1907? Answer: We, the jury, find C. I. Pettit of sound mind. (2) Did any portion of the property situated in Stephens county, Tex., in controversy in this suit, constitute the homestead of C. I. Pettit at the time he conveyed the same by deed to Pierce and Glasscock in May, 1907? Answer: No. (3) Did any portion of the property situated in Stephens county and involved in this suit constitute the homestead of C. I. Pettit at the time he executed the mortgage in February, 1907? Answer: No. (4) State whether or not the said C. I. Pettit acted in good faith at the time he executed said deed to Pierce and

---

\*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Glasscock, in May of 1907, and at the time he executed the mortgage in February, 1907; that is, whether or not, at such times the said C. I. Pettit was guilty of any fraudulent attempt to deprive his wife of the benefit of a homestead exemption in the property involved herein. Answer: In good faith. (5) If you should find that the said C. I. Pettit abandoned his home in Stephens county and acquired a new home in some other county prior to May, 1907, then please state whether or not he acted in good faith in so doing; that is, whether or not there was any fraudulent attempt on the part of the said C. I. Pettit to deprive his wife of the benefit of her homestead exemption. Answer: Acted in good faith. (6) Was C. I. Pettit at the time he executed the mortgage in February, 1907, of sound mind? Answer: He was of sound mind. (7) At the time P. P. Pierce and R. Glasscock purchased the property from C. I. Pettit, in May, 1907, was there, or was there not, at that time, any valid and subsisting mortgage against such property, and, if so, what was the amount of the same? Answer: There was a mortgage of $1,200. (8) At the time Pierce and Glasscock purchased the property in controversy from C. I. Pettit in May, 1907, state whether or not there were any taxes or other liens due against said property, that were paid for out of the proceeds paid by Pierce and Glasscock, and, if so, what was the amount of the same? Answer: Nothing due. (9) State whether or not the consideration paid by Pierce and Glasscock to C. I. Pettit for the land in controversy was the reasonable cash market value of such land at the time and place it was sold, and, if not, then what was the reasonable cash market value of said land at said time and place; and in this connection you are charged that the burden is upon the plaintiffs to show by a preponderance of the evidence that the price paid by said Pierce and Glasscock to said C. I. Pettit for such property was not the reasonable cash market value of such property at said time and place. Answer: A reasonable price. (10) Did said Pierce and said Glasscock act in good faith or bad faith towards C. I. Pettit when they bought the land in controversy; that is, did either of them practice any fraud upon the said C. I. Pettit? Answer: In good faith. (11) What was the reasonable annual rental value of the land in controversy during the past two years? Answer: Rental value $230 per annum." Upon the finding of the jury upon the foregoing special issues, the court entered judgment for the defendants.

[1-3] Appellants' first assignment of error reads as follows: "The court erred in failing to submit the law of the case as made by the evidence to the jury, and in that part of the court's charge which is as follows: 'Special issue No. 1' is not applicable to the facts in this case and was therefore error.

Said charge above mentioned had no application to the facts of this case because there is 730 acres of land in controversy, 200 acres of which had been occupied by C. I. Pettit and wife and their children as a homestead from 1886 up to January, 1901, when Jane P. Pettit, the wife of C. I. Pettit, was legally declared insane and sent to the asylum at Terrell, Tex., where she remained until September, 1909, when she was released and restored to her family and joined as party plaintiff in this suit her children, and prayed for a recovery of her homestead, which she occupied before becoming insane. The proof was that, after the wife of C. I. Pettit became insane, he, with his minor children, the plaintiffs herein, occupied said homestead as a home until 1905, and that he occupied the same by tenant during the years of 1908 and 1907; that in August of 1905, the said C. I. Pettit with part of his children went to Southern Texas for his health and died there in March of 1908; that while there he purchased and sold lots in San Antonio and at other places; that in February of 1908 he owned 4 acres of land, but did not own the house on it; and that on said last-named date said C. I. Pettit mortgaged the entire 730 acres of land for $1,200, giving his note for the same, due in 12 months from February 6, 1907. Under this state of facts, the wife being then alive, and the proof showing that she was not incurably insane, but on the contrary was released within one year from the date of said mortgage, that on May 16, 1909, the said C. I. Pettit sold the said 730 acres of land to the defendant, who assumed payment of mortgage not yet due for 10 months. The status of 200 acres of land was fixed by the Constitution and Laws of the state of Texas, and the same could be neither sold nor incumbered by the husband alone, and under this state of facts the court should have instructed the jury that the deed and mortgage as to 200 acres was void."

An assignment of error should point out the particular action upon part of the trial court of which complaint is made, and if it is uncertain in that respect it is insufficient. The above assignment of error is so vague, uncertain, and indefinite that we are unable to determine accurately the exact matter of which complaint is made. As we understand it, however, it complains of the submission of special issue No. 1 because the issue was not applicable to the facts in the case; the assignment then undertaking to show why it was not applicable by stating the evidence. It will be noted that special issue No. 1 submits to the jury for their determination the question of whether or not C. I. Pettit was of sound or unsound mind at the time he conveyed the land. This was an issue directly raised by the pleadings and evidence, and was properly submitted to the jury for their determination. The first proposition under

this assignment is that, unless the proof showed that the wife was incurably insane at the date of the execution of the deed of trust upon the land and of the subsequent deed, C. I. Pettit acting alone would have no authority to incumber or convey the homestead, nor the wife's interest in the community property, except for the purpose of liquidating community debts. This proposition is not germane and has no relevancy whatever to the correctness of the court's action in submitting special issue No. 1. The same is true of the second proposition urged under this assignment. The second proposition is that, while the law concedes to the husband the right to select and establish a homestead, yet when the homestead has been thus acquired and established, the husband, acting alone, cannot deprive his wife of her rights thereto when she has not the legal capacity to consent to his acts, and if the husband disposes of the homestead once acquired when his wife is under the disability of insanity, the transaction is absolutely void, and the question of whether or not the husband acted in good or bad faith in acquiring a new homestead does not affect the question.

[4-6] The second assignment of error, which is submitted as a proposition, is as follows: "The answer of the jury to the second question is not sustained by the evidence and was reached by the jury because the court had previously told the jury that Pettit had the right to abandon the homestead and that his action in so doing would be binding on the wife and the children." This assignment seems to present two questions: First, whether or not the answer of the jury to the second question was sustained by the evidence; second, it seems to complain of some portion of the court's charge as being upon the weight of the evidence. An assignment complaining of more than one act or ruling of the trial court is not entitled to consideration. As a proposition it cannot be considered, for two reasons: First, because if it discloses any point at all it discloses two points, and is therefore multifarious; second, because it does not point out in what respect the answer of the jury to the second question is not sustained by the evidence. We will say, however, that the answer of the jury to the second question is sustained by the evidence.

[7] From the statement following this assignment it appears that the portion of the court's charge complained of as being upon the weight of the evidence reads as follows: "You are further charged that a husband, acting in good faith, may select the homestead of the family, and where he acts in good faith, he has the right to abandon one homestead and to acquire another, and where a husband in good faith does abandon one homestead and acquires another with the intention of never returning to the old home-

stead, it matters not whether the new homestead is fully paid out and discharged of debt or not." We do not regard this charge as being upon the weight of the evidence.

[8] The fourth assignment of error reads as follows: "The fourth, fifth, sixth, seventh, and eighth special issues submitted by the court was not the law applicable to the facts in this case, because independently of the question of good faith Pettit could not make title to the 200 acres by mortgage or by deed, and the good faith of the defendant could not affect the question of title." This assignment is submitted as a proposition. As an assignment and as a proposition, it is insufficient, as it relates to the finding of the jury upon four different and distinct issues in the case, and is therefore too general. It is therefore not considered.

[9] The fifth assignment of error reads as follows: "The proof in this case showing that the homestead was included in a tract of 730 acres of land, the court under the facts should have instructed the jury independently of the question of the insanity of C. I. Pettit that he could not by mortgage incumber said homestead, neither could he by deed convey the same or any part of the homestead so long as his wife was alive, and this error of the court was emphasized by reason of the facts that the court charged the jury on the weight of the evidence when he told the jury that the subsequent homestead did not have to be paid for before the prior homestead could be disposed of." The propositions under this assignment read as follows: "First. The husband cannot alienate the homestead during the lifetime of the wife by his deed alone. Second. A homestead when once acquired remains as such until disposed of in terms of law, and the husband and wife cannot incumber same with mortgage lien except in the manner given by law, and then only for those purposes given by law. Third. Where the husband of an insane wife conveys the homestead after his wife becomes insane, unless such conveyance is made for the purpose of paying community debts, the deed of the husband alone will not convey the wife's interest in the homestead, unless proof should show that the insanity of the wife was incurable." These propositions are not well taken, because the answers of the jury to the second and third special issues affirmatively found that no portion of the property in controversy was the homestead at the time of the execution of the conveyance to Pierce and Glasscock and the Maxwell deed of trust, and these findings are amply supported by the testimony.

[10] It is well settled that the husband acting in good faith may choose and select the homestead, and where he abandons one homestead in good faith and without fraud, he has the right to acquire a new homestead; he has the right to do this independ-

ent of the wishes of the wife, and her insanity would not deprive him of this right, because her consent is not necessary. The testimony in this case amply supports the finding of the jury that the land in controversy was not the homestead of Pettit at the time of the conveyance and deed of trust above mentioned.

[11] What has been said disposes of the various assignments of the plaintiffs in error. We do not think, however, that the judgment rendered herein was a proper one, and that it should be in part reversed and remanded. What we deem to be of controlling effect in this case is not called to our attention in any manner by the plaintiffs in error. We think, however, that there is error in the judgment, apparent upon the face of the record, which is the determining question, and upon which the very right and justice of this case depends, and we deem it our duty to take cognizance of this error, though not assigned or presented in any manner. Wilson v. Johnson, 94 Tex. 272, 60 S. W. 242; Harris v. Petty, 66 Tex. 514, 1 S. W. 525; Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 533, 124 S. W. 85; Coburne v. Poe, 40 Tex. 410; City of San Antonio v. Talerico, 98 Tex. 151, 81 S. W. 518; Adams v. Faircloth, 97 S. W. 507; Bexar, etc., v. Newman, 25 S. W. 461; Hahl v. Kellogg, 42 Tex. Civ. App. 636, 94 S. W. 389.

[12] It is apparent upon the face of this record that the land sued for belonged to the community estate of Pettit and his wife; that after the wife had been adjudged insane and committed to an insane asylum, and while still in that institution, the husband conveyed the property. Article 2221 of the Revised Statutes of 1895 reads as follows: "Where the wife dies or becomes insane, leaving a surviving husband and child, or children, the husband shall have the exclusive management, control and disposition of the community property in the same manner as during her lifetime, or sanity, and it shall not be necessary that the insane wife shall join in conveyances of such property or her privy examination and acknowledgment be taken to such conveyances, subject, however, to the provisions of this chapter." This article will be found in chapter 28, which relates to the administration of community property, and by reference thereto it will be noted that the other articles of this chapter provide that upon the insanity of the wife the right of the husband to the management, control, and disposition of the community property is contingent upon the filing by him of written application for authority to act as such survivor, returning an inventory, appraisement, and list of claims of the community estate, and giving bond, in the same manner as if the wife had died. So far as the record in this case discloses, C. I. Pettit took no such steps as would authorize him to manage, control, and dispose of the community estate of himself and his insane wife, and in the absence of such action upon his part, and approval by the county judge of the inventory, appraisement, list of claims, and bond, as provided by article 2226, we think the husband had no right to mortgage or convey the community interest of his wife in the land sued for. Defendants in error urged that there was a valid mortgage of $1,200 upon the land executed by Pettit in February, 1907, and that this mortgage lien was satisfied out of the moneys received by him from the subsequent sale of the land, and that plaintiffs in error could not recover the land without first tendering the amount of said mortgage. We do not deem this position well taken. The mortgage referred to was executed in 1907, and was given for money then borrowed, and the husband had no right to thus incumber the community interest of his insane wife. He neither had the right to incumber nor convey the same without having complied with the article above quoted.

Defendants in error rely upon the case of Aultman v. Shields, 20 Tex. Civ. App. 345, 50 S. W. 219, in support of their contention that the husband had the right to convey the community property. It was there held that a husband whose wife was insane could convey the homestead by his own conveyance, but in that case the conveyance of the homestead was executed in 1885, and at that time said article 2221 appeared in the Revised Statutes of 1879 as article 2166 and read as follows: "Where the wife dies, leaving a surviving husband and a child or children, the surviving husband shall have the exclusive management, control and disposition of the community property after her death in the same manner as during her lifetime, subject to the provisions of this chapter." In 1893 this article was amended so that the same reads as it now appears in the Revised Statutes of 1895 as article 2221 above quoted.

The right of C. I. Pettit to dispose of the community estate of himself and his wife at the time he conveyed to Pierce and Glasscock was subject to the provisions of chapter 28 of the Revised Statutes of 1895 because his wife was insane. The fact of her insanity is shown by the record, and, as a legal proposition, it follows that he had no right to convey or incumber unless it was affirmatively shown that he had complied with the provisions of this chapter, which the record does not disclose that he did. The court therefore should have peremptorily instructed a verdict for the plaintiff Jane P. Pettit, the wife, for her one-half interest in the property. As to all the plaintiffs in error, except the said Jane P. Pettit, it is therefore ordered that this cause be, and the same is, hereby affirmed, and the judgment of the lower court is affirmed in so far as concerns a one-half undivided interest in the land.

As to the said Jane P. Pettit and the remaining undivided one-half interest in the property, the judgment of the lower court is reversed and remanded.