## SARGEANT v. SARGEANT. (No. 11911.)

Court of Civil Appeals of Texas. Fort Worth. Feb. 11, 1928.

Rehearing Granted in Part and Overruled in Part April 27, 1929.

Jos. F. Greathouse, of Fort Worth, for appellant.

R. C. Fuller and William M. Short, both of Fort Worth, for appellee.

BUCK, J. Benjamin F. Sargeant, hereinafter called B. F. Sargeant, and his daughter, Mrs. Maude E. Weatherford, joined pro forma by her husband, C. E. Weatherford, W. H. Sargeant, the son of B. F. Sargeant, and Mrs. Carrie Brown, a daughter, joined pro forma by her husband, Herbert Brown, filed a partition suit against Mary Louise Sargeant, the granddaughter of B. F. Sargeant. The property involved is a 40-room building and the lot upon which it is situated, in the city of Fort Worth, built and used for

a rooming house. The evidence shows that the property had been sold for $45,000, and the purpose of this suit is to determine the amounts which should be adjudged to each of the litigants. The property was acquired during the married life of B. F. Sargeant and his wife, Mary Jane Sargeant. They were married in 1880, and had six children, two of which died in infancy, or without issue, and a son, George F. Sargeant, died in 1918, leaving a minor child, the defendant. It is agreed that B. F. Sargeant is the owner of one-half of said land and premises, and that the other three plaintiffs and the defendant is entitled to one-eighth each. The only controversy is as to whether charges and claimed expenses alleged to have been paid by B. F. Sargeant subsequent to his wife's death were chargeable to the other cotenants. These expenses consist of a note made by B. F. Sargeant and his deceased wife in 1917 to Mrs. Sallie Culberson, for the purpose of paying back taxes, in the sum of $2,636.94. Subsequent to the death of his wife, and on May 15, 1920, B. F. Sargeant paid off said note, together with all interest thereon, the total amount being $3,264.32; said note was paid out of the proceeds derived from the rents and revenues from said property subsequent to the death of Mary Jane Sargeant, and while B. F. Sargeant was occupying the same as a homestead. A number of items, such as an item of $147.50 for roofing; $180 for the installation of an automatic heater; $400 for the installation of a fire escape for said building; fire insurance for several years, and state, county, and city taxes for the years intervening between the death of Mary Jane Sargeant and the filing of the suit set out, amounting in the aggregate to the sum of $8,733.03. It is agreed that each and all of said items was paid by B. F. Sargeant out of the rents and revenues derived from the property sought to be partitioned, and which accrued during the time that he occupied the same as a homestead. It is further agreed that the following amounts were received and collected and paid out by said B. F. Sargeant during the time he occupied the said premises as his homestead, and that the same were received and collected by him as rents from said property, to wit: $3,990 received, and $3,461.84 paid out; that the total amounts aggregated $26,136.34 received, and $24,195.79 paid out.

It is further agreed that the further items were necessary expenses, and were paid by the receiver appointed out of the proceeds of the sale of said property; $628.01, city taxes due and unpaid on said property for the year 1925; $559.20, city taxes due and unpaid on said property for the year 1926; $263.40, state and county taxes due and unpaid on said property for the year 1926; $259, taxes accrued for the year 1927, up to the time of the sale; $46.25, court costs in this case; $5 for bringing the abstract of title down to date.

It is further agreed that the receiver received from the purchaser the sum of $45,000 for the property involved in this suit, included in which was certain property to be taken by the plaintiffs herein, all of whom are adults, in lieu of money, at the price of $20,-000, and upon which there had accrued, as taxes, at the time of the sale, and which the said purchaser paid to the receiver, the sum of $106.97.

The court awarded a partition, and held that the rents and revenues during the year 1926, collected and expended by B. F. Sargeant, exceeded the combined amount of the taxes, city, county, and state, existing against said property, and that said taxes would be a charge against the interest of said B. F. Sargeant, and should not be accounted for from the proceeds of the sale of said property, and would not be a charge against the interest of the other heirs; that, after deducting from the amount paid by the purchaser, to wit, $45,106.97, said amounts of $559.20 and $259, the same being said taxes paid by the receiver for the years 1926 and 1927, and the sum of $263.40, the amount of county and state taxes paid by said receiver for the year 1926, and the sum of $46.25, the amount of court costs paid by the receiver, and the item of $5 for bringing the abstract of title down to date, a balance of $43,974.12 is left to which the minor defendant is entitled to one-eighth; that out of the amount allowed the minor defendant the fee of the guardian ad litem should be paid, leaving the amount due the said minor defendant $5,496.77, less $150 payable to the guardian ad litem. From this judgment the plaintiff B. F. Sargeant has appealed.

### Opinion.

Appellant wants to keep the rents collected, and yet charge the other cotenants with the taxes, insurance, and other expenses incurred during the years subsequent to his wife's death. The evidence shows without contradiction that no dependent member of the family of appellant lived with him in his home subsequent to his wife's death. Therefore the rents, not being used or necessary for the support of the family, did not constitute appellant's separate property, and the interest of the other heirs in the homestead were not affected by such occupancy. Article 16, § 52, of the Constitution, reads as follows:

"On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving

husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having jurisdiction, to use and occupy the same."

The surviving husband or wife, so long as he or she elects to use or occupy the homestead as such, has the right to use and occupy the same. Brau v. Von Rosenberg, 76 Tex. 522, 13 S. W. 485.

■ In Mattingly v. Kelly (Tex. Civ. App.) 124 S. W. 483, it was held that a surviving husband is entitled to the use and occupancy of the homestead, and, so long as it remains his homestead and contributes to the support of his family, he is entitled to the rents thereof as his separate property; and, where he uses the same in paying a community debt, constituting a lien on the homestead, and taxes thereon, he is entitled to reimbursement therefor out of the community estate. But the last conclusion noted has been modified. Higgins v. Higgins, infra. It is held in Woods v. Alvarado State Bank (Tex. Civ. App.) 275 S. W. 187, where there is no family, there is no homestead exemption. The homestead, with privilege of exemption from execution, is not an estate in land, but is a mere immunity growing out of existence of certain conditions.

The trial court found that the property of appellant and his cotenants was used by him and constituted his business homestead. Appellant alleged and claimed that the rentals from his rooms constituted his only means of livelihood. The court found that the rents received and collected after the death of Mrs. Sargeant aggregated about $2,000 more than the amounts paid out.

In Simms v. Hixon (Tex. Civ. App.) 65 S. W. 36, affirmed by the Supreme Court in 65 S. W. 35, it is held that, where the probate court sets apart the homestead and other exempt property of the deceased to the widow and children of the decedent, such order withdraws such property from administration, but does not affect the rights of those owning the property.

■ To use and occupy the homestead within the meaning of article 16, § 52, of the Constitution, does not require a residence upon it, and, when left either from necessity or convenience, no matter for how long a time, if it contributes to the support of the family, it remains the homestead. Foreman v. Meroney, 62 Tex. 723; Flynn v. Hancock, 35 Tex. Civ. App. 396, 80 S. W. 246; Powell v. Naylor, 32 Tex. Civ. App. 341, 74 S. W. 338; Hall v. Fields, 81 Tex. 558, 17 S. W. 82.

The surviving husband or wife is entitled to occupy the homestead after the death of the other spouse, so long as such survivor may choose to occupy it; and occupancy thereof is expressly required only as against the right of descendants of the deceased to have a partition of the property. Schneider v. Bray, 59 Tex. 668; Bell v. Schwarz, 37 Tex. 572; Kessler v. Draub, 52 Tex. 575, 36 Am. Rep. 727; Blum v. Gaines, 57 Tex. 119.

■■ The community homestead passes to the survivor, free from debts of the community, and, on the death of the survivor, descends to her or his collateral heirs, free from liability for such debts. Cameron v. Morris, 83 Tex. 14, 18 S. W. 422. The rents of a business homestead are not exempt from execution against the owner. Hinzie v. Moody, 13 Tex. Civ. App. 193, 35 S. W. 832, writ of error refused.

In Higgins v. Higgins, 61 Tex. Civ. App. 41, 129 S. W. 162, opinion by Chief Justice Conner of this court, it is said that, on partition of the community estate after death of the wife, the husband may not be allowed for permanent and valuable improvements made by him, after her death, on the homestead; an undivided half interest in the community estate vesting in the wife's surviving children on her death, so that they and he became joint tenants, and one joint tenant having no right, without the consent of the others, to so improve the community property, except when necessary for its preservation. Where a joint tenant has improved common property, the court will on partition, provided it will not injure the others, apportion the part bearing the improvements to the one making them. The court said:

"So, too, we think the court erred in allowing appellee the items for improvement on the homestead aggregating $583. Upon the death of the wife an undivided one-half interest in the entire community estate was by statute vested in the surviving children of the deceased wife. They therefore were in the position of joint owners and tenants with W. A. Higgins, and we know of no principle of law which will authorize one joint tenant, save by the consent of his co-tenants, to place permanent and valuable improvements upon the common property, except when necessary for its preservation. To so hold would be, in effect, to empower one joint tenant to impose upon his co-tenant burdens that they neither desired, nor had it in their power to meet. It is a familiar principle of equity, however, that in case a joint tenant has made improvements upon common property the court will in partition, if it can be done without injury to the remaining owners, set apart the improved property to the tenant making the improvements, and it may be that in the case before us appellee may be thus afforded the full benefit of the improvements mentioned."

In the above case the court held that the survivor should not be allowed compensation for his services in looking after the communi-

ty estate, after demand for partition was made, and after refusal on his part to accede to the demand.

Since the evidence shows that the appellant has occupied at least a room in the homestead since his wife's death, and has collected all the rents and revenues therefrom, and has collected rents and revenues largely in excess of what he has paid out for taxes, insurance, etc., we think the court did not err in refusing to adjudge any part of these expenses against the minor defendant. And in so holding we are not unmindful of the fact that the minor defendant pleaded the statute of limitation against all of the expenses incurred prior to two years before the filing of the suit. The largest item, to wit, the loan made by Mrs. Culberson of the sum of $2,636.94, was paid in 1920, some seven years before the filing of the suit. We do not pass upon the question as to whether or not said plea would be good as to many of these items, but do conclude that the court, in the exercise of his equitable powers, rendered a just judgment.

The judgment is affirmed.

### On Motion for Rehearing.

Appellants filed a vigorous motion for rehearing, and we certified to the Supreme Court certain questions as follows:

(1) Is the two-year statute of limitation a bar, in this case, to all items of expense accruing and paid for prior to two years before the filing of the suit?

(2) Should the item of $106.97 be added to the price for which the property was sold, and appellee awarded one-eighth thereof?

(3) Where the facts showed that, during some eight years subsequent to the death of Mrs. Sargeant, the income from the property exceeded the expenses thereon by more than $2,000, and the property was shown to be a business homestead, and, in the absence of any specific language in the Constitution or in any statute making such income the separate property of the plaintiff, and in view of the fact that there was no proof in the record that such excess was absolutely necessary to the support of the survivor (a) was such income the separate property of B. F. Sargeant; (b) was such excess the separate property of B. F. Sargeant?

(4) Are the principles of equity to be applied in deciding this case, or are merely questions of law involved?

The Supreme Court answered that the item of $106.97, taxes due on the property taken in part payment for the rooming house occupied by B. F. Sargeant and his wife, prior to his wife's death, and thereafter by B. F. Sargeant, should not be considered as subject to partition; that said $106.97 were taxes due on the property taken in part payment, and said amount was necessary to make the property of the value of $20,000, at which it was taken by the appellants.

Question No. 3 was answered as follows: Under the various provisions of our Constitution and the statutes of this state, all revenues, rents, and income derived from the homestead, as such, are the separate and individual property of the survivor, and that without any reference whatever to whether the same is rented out either in whole or in part by the survivor, or used by him in a business of his own. Under the plain provisions of the Constitution and statutes of this state, no other meaning is possible than to vest the survivor with all income of every character derived from the homestead so long as the homestead rights shall exist, as his separate and individual property. As to the item of $3,264.32, being the note paid by appellant, that such item was a proper charge against the community estate, and the survivor, having paid all of same out of his separate funds, should be reimbursed by the heirs of the wife for one-half thereof. The survivor was also personally liable for the payment of same. That the appellant, Ben F. Sargeant, had no right to charge the heirs of the deceased wife with expenses incurred by him in making ordinary repairs and paying current taxes on the one-half interest on the property. That the survivor should not be reimbursed for such taxes and expenses for upkeep.

Question No. 2 is answered "No"; question No. 3, both (a) and (b), are answered "Yes."

Therefore, in obedience to the answer of the Supreme Court, we hold that the appellee, Mary Louise Sargeant, is not entitled to any part of the $106.97, paid to the purchaser of the homestead as accrued taxes on the piece of property taken in part payment at the valuation of $20,000. We further hold that the expenses incurred for the upkeep of the homestead during the time subsequent to Mrs. Sargeant's death should be charged against said Ben F. Sargeant; that the excess of revenue over the upkeep, including taxes during said period, should be set apart to Ben F. Sargeant; that the appellee should be charged with one-eighth of the amount of the note for $3,264.32, paid by Sargeant after his wife's death, said item of indebtedness accruing prior to his wife's death.

Therefore appellee, Mary Louise Sargeant, is properly chargeable with one-eighth of $106.97 and one-eighth of $3,264.32, making a total of $421.41, which should be deducted from the amount awarded the appellee by the trial court, which judgment was affirmed by this court.

The facts show that the receiver paid, under orders of the court, five items, consisting of taxes due on the property, to the city of Fort Worth, and to the county and state, aggregating $1,709.61. Under the answers of the Supreme Court, such taxes should have been paid by B. F. Sargeant. No objection

was made by appellee in the court below as to her being charged with one-eighth of this amount, and there is no assignment of error in the record presenting this question. Under this state of facts, have we the authority in reviewing the judgment below and here rendering such judgment as the facts and the law justify? Can we consider the question as to whether or not appellee should be relieved of one-eighth of this amount?

Rule 23, of the Rules for Courts of Civil Appeals, reads as follows:

"Said record should contain an assignment of error as required by the statute. If it does not the Court will not consider any error but one of law that may be apparent from the record, if the judgment is one that could legally have been rendered in the lower court, and affirmed in the appellate court."

The question involved is whether or not the mistake of the trial court in charging appellee with one-eighth of the amount of taxes paid, which the Supreme Court has held should have been paid by B. F. Sargeant, constitutes fundamental error.

In Searcy v. Grant, 90 Tex. 97, 37 S. W. 320, 322, cited in Mills v. Mills, 265 S. W. 142, by the Commission of Appeals and approved by the Supreme Court, the court said:

"An error, not assigned, of which the Court of Civil Appeals may take cognizance, must be an error of law apparent on the record which necessarily affected the result, and it must plainly appear from the record that, in the absence of such error, the result might have been different."

In Foster v. Spearman Equity Exchange, 266 S. W. 583, 586, by the Amarillo Court of Civil Appeals, it is said:

"A fundamental error is one that is apparent of record; such error, as being readily seen, lies at the base and foundation of the proceedings, and affects the judgment necessarily. Oar v. Davis, 105 Tex. 484, 151 S. W. 794, and authorities therein cited."

In Carroll v. Evansville Brewing Ass'n, 179 S. W. 1099, 1100, by the Dallas Court of Civil Appeals, it is said:

"Notwithstanding the unequivocal terms of the written contract declared on and the foregoing findings of fact, the court concluded, as a matter of law, that said contract was not in violation of the anti-trust laws of this state. In so concluding we think the court erred and that such error and the rendition of the judgment, as a result thereof, is 'an error in law apparent on the face of the record.'"

See Gibson v. Pierce (Tex. Civ. App.) 146 S. W. 983, 987, reversed by the Supreme Court in 108 Tex. 62, 184 S. W. 502, 1 A. L. R. 1675, but the Supreme Court's decision did not disturb this holding. The court said:

"We do not think, however, that the judgment rendered herein was a proper one, and that it should be in part reversed and remanded. What we deem to be of controlling effect in this case is not called to our attention in any manner by the plaintiffs in error. We think, however, that there is error in the judgment, apparent upon the face of the record, which is the determining question, and upon which the very right and justice of this case depends, and we deem it our duty to take cognizance of this error, though not assigned or presented in any manner. Wilson v. Johnson, 94 Tex. 272, 60 S. W. 242; Harris v. Petty, 66 Tex. 514, 1 S. W. 525; Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 533, 124 S. W. 85; Coburne v. Poe, 40 Tex. 410; City of San Antonio v. Talerico, 98 Tex. 151, 81 S. W. 518; Adams v. Faircloth [Tex. Civ. App.] 97 S. W. 507; Bexar, etc., v. Newman [Tex. Civ. App.] 25 S. W. 461; Hahl v. Kellogg, 42 Tex. Civ. App. 636, 94 S. W. 389."

We conclude that the failure of the trial court to adjudge the amount of taxes paid by the receiver against B. F. Sargeant alone was error apparent of record. Therefore Mary Louise Sargeant, appellee, should be relieved of the one-eighth of said amount adjudged against her. The amount of taxes as before stated was $1,709.61. But only $1,081.60 was adjudged against the estate before partition. One-eighth of this amount is $135.20, which should be deducted from $441.21, leaving a balance of $306.01.

The judgment in favor of appellee is therefore reduced in the amount of $306.01, and the judgment so reformed is affirmed.

The motion for rehearing is granted in part and overruled in part. The costs of this appeal are adjudged against appellee.