### G. & D. COOK v. K. J. LOVE AND ANOTHER.

1. In January, 1858, F. attached real estate for debt, and on the first of April, 1858, recovered in the suit a judgment *in personam*, but no judgment or order of condemnation or sale of the land. On the seventeenth of March, however, pending the suit, his debtor, who owned the land, conveyed it to him by deed. But, on the thirteenth of March, four days before F.'s deed, C., another creditor of the owner, recovered a judgment against him in the county where the land lay, and caused execution to issue thereon, under a levy of which he bought the land, and now brings suit for it against F. and his tenant. *Held*, that F.'s attachment, having never been prosecuted to judgment, can avail him nothing; and his deed, being subsequent to the rendition and lien of C.'s judgment, cannot hold the land against the latter's title acquired under the judgment.

2. A jury having been waived in the court below, and the cause having been tried on an agreed statement of facts, this court, reversing the judgment below, does not remand the case, but proceeds to render such judgment for the plaintiffs as should have been rendered by the court below.

APPEAL from Harrison. Tried below before the Hon. J. B. Williamson.

The facts in the case are clearly but fully condensed in the opinion of the court. The suit was originally against Love alone, but Frais came in as landlord of Love, and was made a party defendant.

*Robards & Jackson*, for the appellants.—It may be entirely true that the discontinuance or abandonment of the attachment is accounted for, in a mere rational point of view, by the fact that on the seventeenth of March, 1858, *after* the levy of the attachment and *before* the trial of the cause, Frais procured from Hynson a conveyance of the attached property, in consideration of $2500 of the indebtedness sued for. But how can this avail the defendants in the present cause? Can it have the effect of dating back Frais's deed from Hynson to the issuance of the attachment, or of making his title take effect "by relation" from that time, so as to destroy the lien of the judgment rendered against Hynson on the thirteenth of March, 1858, under which the plaintiffs in this suit derive title? Did the levy of the attachment *divest* Hynson of his property in the land, so that the judgment under which plaintiffs claim could acquire no lien upon it?

One or both of these propositions must be established by the defendants before they can derive any aid or support from the attachment proceedings; but both propositions are so unwarranted, if not so preposterous, that we feel exonerated from any effort to refute them.

The simple truth is, that whether through ignorance of the law, "which excuseth nobody," or from some less creditable and unexplained motive, Frais forfeited and lost whatever inchoate lien he held by virtue of his attachment. If the attachment had been prosecuted to a condemnation of the land, it is true that Frais's debt would have been entitled to priority of payment over the judgment under which plaintiffs derive title. But that is an "if" which never happened. Instead of that inchoate lien

being matured and perfected by judgment, it was lost by the acts or omissions of Frais himself, and thus to all intents and purposes became as though it had never been. There is not a single element of fraud, or of surprise, or even of mistake of fact, to generate the semblance of an equity in behalf of the defendants.

The deed under which they claim has no connection with the attachment proceedings, and can derive from those proceedings no possible aid or antiquity. The levy of the attachment did not divest Hynson of his title to the land, nor prevent the judgment of March 13 from taking lien upon it. That judgment did take lien upon the land before Frais acquired any color of title to it, and although by a possible future contingency that lien might never have availed anything, yet that contingency never occurred, and the lien did become available, and now fortifies the title of the appellants against any assault the opposing parties can make.

The land sold for but twenty dollars, but that fact cannot impeach the plaintiffs' titles, and it is accounted for by the consummate folly or ignorance of Frais himself. Instead of paying out the judgment, or making the land bring its value, his agent attended the sale and notified parties that the land belonged to Frais, and he forbade the sale.

We submit with confidence that the case is a plain one, and the only matter of surprise is how the court below arrived at a judgment so palpably erroneous.

*Hall & Turner* and *Moore & Shelley*, for the appellees.— The only question in this case is, whether the judgment under which appellants claim, being four days older than the deed to appellee, Frais, entitled them to the land in controversy. Previous to the judgment the land had been attached by Frais to secure debts due him, for nearly double its value, and in payment of which he purchased it at private sale, it is true, at a price much greater than its admitted value. The judgment was only a lien on such legal

title or equitable interest as the defendant had in the land at its date. (Blankenship v. Douglas, 26 Tex., 229; Hare & Wallace Lead. Cas. in Eq., vol. 2, part 1, p. 75.) When the judgment was rendered the land was bound for the payment of Frais's note for nearly double its value, and the plaintiffs are not entitled to enforce it against the land except in subordination to the superior legal as well as equitable right of Frais. The conveyance of land having been made to Frais for a full and ample consideration and without the slightest suspicion of fraud or bad faith as against appellants or any one else, it would be contrary to every principle of equity to take the land from appellees, who have the elder equity, and give it to appellants, who claim only a junior equity, even though by ignorance or mistake of appellants they may have acquired the apparent superior legal title. (See also, Hargrove v. De Lisle, Tyler, 1869, 32 Tex. Reps.)

WALKER, J.—This is an action of trespass to try title. Both parties claim under W. C. Hynson. The property was sold at sheriff's sale, on a judgment for $785, rendered in favor of the plaintiffs on the thirteenth day of March, 1858. On the seventeenth of March, 1858, Hynson sold and deeded the land to one Frais, under whom the appellee claims title.

Prior to the rendition of the judgment of March 13, 1858, Frais had commenced two suits by attachment, one for $2500 against W. C. Hynson, and one for $1400 against W. C. and C. E. Hynson. On the first of April, 1858, judgments were rendered against the Hynsons for the latter claim *in personam*, and no judgment or order of any kind on the attachment, Frais appearing to rely upon his deed for the land. This deed was subsequent by four days to the date of the lien, under which appellants claim title.

We are unable to say whether there was any validity in the attachment or not. It appears to have been abandoned. It could only

have operated as an inchoate lien upon the land, and to make it avail anything as against the judgment of March 13, it must have been carried into a judgment, which it never was. There appears to have been no irregularity or fraud in the sheriff's sale. The property only brought $25, but this was probably owing to the fact that Frais's attorney forbid the sale, and gave public notice of Frais's claim of title under his deed of March 17, 1858. This deed, unsupported by any subsequent judgment or order upon the attachment, cannot cut out the appellant's title under a judicial sale.

We must therefore reverse the judgment below, and inasmuch as a jury was waived below, and the case tried on an agreed state of facts, we proceed to render judgment for the appellants, that they recover the land in controversy, together with their costs in this court and in the district court, and that the writ of possession issue; and that appellee be forever barred from setting up title to the land in controversy.

Reversed and rendered.