## GEO. W. GENTRY v. H. E. LOCKETT.

In an action for the trial of the right of property, judgment was rendered against the claimant for the property, and against his surety for the damages. Under this judgment two executions were sued out against the claimant and his surety, one for the damages and the other for the value of the property. The surety offered to pay the damages, and sought to enjoin the execution against him for the value of the property, for want of a judgment to sustain it. He sued out a preliminary injunction, which was subsequently dissolved. *Held,* error. There was no judgment against the appellant to sustain the execution for the value of the property, and therefore his injunction should have been perpetuated. (Cook *v.* Love, 33 Texas, 487, cited and approved.

APPEAL from Washington. Tried below before the Hon. I. B. McFarland.

The opinion of the court sufficiently indicates the material facts of the case.

*Sayles & Bassetts,* for the appellant.

*Breedlove & Ewing,* for the appellee. It may be urged, that two executions issued, when the law allowed only one. Is this so? Upon the coming in of the verdict of the jury the statute provides that the court shall enter up judgment for ten per cent. damages, etc. (Article 5314, P. D.) That must be a distinct judgment.

Article 5316, P. D., provides, that in all cases, where any claimant of property ＊ ＊ ＊ shall fail to establish his right thereto, and judgment shall be rendered against him (this certainly fixes one judgment), "if he shall fail to return "such property," etc., and the sheriff shall certify such fact, then the clerk shall indorse on the bond that it has been forfeited; " when such bond shall have the force and effect of a " judgment against all the obligors for the value of such prop- " erty, with legal interest thereon from its date, upon which

" execution may issue as on other judgments." " Shall have " the force and effect of a judgment," " upon which " (judgment) " execution may issue, as on other judgments."

Does not this make two judgments? Could anything be plainer? Could one execution include both of these judgments? If so, one execution could and should cover all judgments, no matter how numerous, between the same parties; and yet, such is not the fact. But the reverse of it is the fact. How, then, could the court do otherwise than dissolve the injunction?

It was argued in the court below, that the motion to dissolve should be overruled and the injunction perpetuated, because Lockett failed to foreclose his attachment lien on the cotton in the judgment against John Fullerton (the original suit, out of which the attachment grew). Is this objection tenable?

*First.* This defense, if valid, should have been made in the suit for the trial of the right of property, and, if not made there, will afford no ground for injunction. If made there, and there was error in the judgment, then his remedy was a revision in the Supreme Court. (See 30 Texas, page 847; 9, page 85; 6, page 260.

*Second.* But, as an original proposition, is it tenable? We maintain that, so soon as the oath was made, and the bond given, that the lien on the cotton was lost to Lockett. Upon the levy of the writ of attachment by the sheriff the cotton was " *in custodia legis.*" So soon as the statute was complied with, and the sheriff delivered the cotton to Thomas Fullerton, the law lost its control over it. The law no longer had jurisdiction over it. How could the court foreclose a lien upon property over which it had no jurisdiction? If the property had remained in the hands of the officer of the law, the court could have exercised jurisdiction over it on the final trial; but when, under the statute, a stranger to the writ came in and made oath, and gave bond, the property passed out of legal custody and the court no longer had jurisdiction over it.

Observe, that the Act for the trial of the right of property,

was passed March 18th, 1848. The Act pertaining to attachments was passed March 11th, 1848; so that in case of any apparent conflict, the Act of March 18th must govern. This view is also strengthened by reference to Article 152, Paschal's Digest, pertaining to special bail. There the attachment lien is lost, so soon as the statute is complied with.

So, also, in regard to rent. The landlord levies a distress warrant on the crop of his tenant. The tenant replevies, giving security. The crop is released, and the case proceeds to judgment; but the lien is not foreclosed on the crop that was levied on. But, if execution is returned "not satisfied," then the landlord sues on the replevy bond. Meanwhile, if the obligors in the replevy bond become insolvent, his debt is lost. But, where the replevy bond is given, the lien on the crop is lost, and a new security substituted — just so, when property is levied on by writ of attachment.

When a third party complies with the statute provided for the trial of the right of property, the attachment lien is lost and a new security is substituted.

In all these cases the matter is controlled entirely by statute. The cases are not parallel with those where the lien is created by the voluntary act of the parties, as the vendor's lien and the mortgage lien. These are created by law; those by the voluntary act of the parties.

Besides, what has the appellant to do with that question? He is not a party to the suit, out of which grew the attachment. The sole question involved in the suit for the trial of the right of property was: "Was the cotton the property of Thomas S. "Fullerton?" And this question once decided against T. S. Fullerton, the thing remaining for him to do was to return the property back to the sheriff in as good condition as when he got possession of it. That done, his co-obligors were discharged. That undone, and the statute provided the remedy, which was strictly pursued in this case.

The question of the lien is not an inquiry for his sureties. They are strangers to that issue. That may or may not be a

question for John Fullerton, but it is not the business of the sureties of the claimant; no more so than of the sureties on a special bail bond, or a rent replevy bond. This bond enabled the claimant to get possession of the property from the proper legal custodian thereof, and now to allow the surety of the claimant to set up fancied defects in the proceedings in the original suit, out of which the attachment grew, would be to allow a party to take advantage of his own wrong.

If such be the law, any stranger, discovering defects in attachment proceedings, could come in and make oath and give bond under the statute for the trial of the right of property, and no matter whether such party had a shadow of right to the property, and no matter if the issue were found against him, all he would have to do to hold the property would be to fail to deliver it, and then sue out an injunction. He would then be behind a bomb-proof and a law-proof intrenchment. Securely would he stand there and hurl defiance at his accusers.

The law proposes to protect parties in their rights, not in their wrongs. These questions of defects in the attachment proceedings might be set up by the defendant to such proceedings, but certainly they could not avail a stranger to such proceedings; and that, too, after a jury had pronounced that he had failed to establish his claim to the property.

But, we have said, there was no defect in the proceedings, and a fair construction of the law will support this position.

For example, after oath and bond, in cases of this sort, and the property has passed out of the hands of the sheriff into the hands of the claimant, suppose such claimant to sell the property to a fourth party, and receive the purchase-money (it will not be contended that he has no right to sell it); and suppose the purchaser to hold the property until after the attachment suit and the trial of right of property suit shall have both been decided, and suppose that the claimant shall fail to establish his right to the property; and suppose the attaching plaintiff to foreclose his attachment lien on the property in his

judgment against the defendant in attachment. Now, we respectfully ask, whether the law will follow that same property in the hands of that fourth party? No man in his senses would say it would or could. It is repugnant to common sense. He purchased from one having the right to sell, and paid out his money, and the law will protect instead of molest him. Well, then, does the law require an attaching plaintiff to do an idle thing? He could gain nothing by it—then why do it? It would be wholly useless. And just so in cases of special bail. Just so in cases for rent-money, where the tenant replevies the produce. The lien created by the levy is lost, and other security substituted therefor, and wholly new.

Take the case of rent. The distress warrant is levied. The tenant replevies. He can then sell the produce, and thus the lien of the landlord is lost forever. If not, he could afterwards follow the property. If not, how could a purchaser get a good title? We know it is done all the time, and that purchasers of such property do acquire good titles thereto. How do they get good titles, if the lien is not lost? By what process?

Every court would hold that judicial process could not follow property so purchased, under such conditions. It would be an impossibility, it would be unmeaning; and no enlightened code of laws requires impossibilities. Nor do courts exact unmeaning judgments. No court can foreclose a lien when there is no lien. Well, when the lien once existing is lost, it is the same as if it had never existed—so far as the power of the court to foreclose is concerned.

These propositions seem, to us, unanswerable, and, if so, the injunction in this case was rightly dissolved. The appellee is the only one who has any right to·complain of the judgment of the court, and that because the court failed to award the damages as provided by statute. (See P. D., Article 5314.)

We may add, that courts are not intended as snares to entrap, but they are intended to furnish remedies for protection. How, then, shall this appellant hold property that does not belong to

him, when the rightful claimant is seeking to recover it? Which party will the law assist, the rightful claimant, or the wrongful holder?

Let us present another view of this case. When an attachment is levied on property, and a third-party claims such property under the statute in question, the fact of such claim begets a new suit. Such new suit is entered on the docket as an independent suit, and the issues growing up under it are tried under the statute as other suits (Paschal's Digest, Article 5312), and such new suit is in no way connected with the other. It stands on the docket to be called and tried like other suits, and may be tried before the attachment suit, out of which it grew, and necessarily would be in case of delay in the trial of the other suit. Suppose the case out of which the attachment grew to be continued for several terms, and the suit for the trial of the right of property to be called for trial in its order, and tried, and the claimant fails to establish his claim to the property, what then does the law require of him? Simply to return the property to the sheriff in as good condition as when he received it. In case he fails to do so, then the sheriff certifies such fact to the court, and the clerk indorses on the bond that it has been forfeited, and execution issues against all the obligors therein as on other judgments. About all this there is no difficulty.

Then, after execution issue, will the sureties on the bond be allowed to enjoin the proceedings by an extraordinary writ, until the other case shall be tried? Absurd! Nonsensical!

What business have they with such an inquiry? They undertook to be sureties for the claimant that he would comply with his bond. In default of such compliance, the law determines the rest. The issue once decided adversely to the claimant, and he and his sureties stand before the law as holding property that does not belong to them, and they will not be further heard in opposition to the rights of the parties to the attachment suit.

Defendants in attachment suits are equally interested with

plaintiffs in a proper construction of this statute. Claimants come in under the statute and get possession of property levied on without the consent of either plaintiff or defendant, and on failing to establish such claim, it is the right of the defendant that the specific property shall be returned in as good condition as when levied on; and, in default of this, that the obligors in the bond shall respond in the value of the property and the interest added. This is but simple justice, as well as law.

WALKER, J. Lockett, the appellee, brought suit against John Fullerton by attachment, which was levied on one bale of cotton. The cotton was claimed by Thomas S. Fullerton, who resorted to the statutory trial of the right of property, having filed the necessary oath and bond, with the appellant as one of his securities. On the trial of the cause, the appellee obtained a judgment *in personam* against John Fullerton, but nothing was done with the attachment.

At a subsequent term of the court, on trial of the right of property, judgment went against Thomas S. Fullerton for the bale of cotton, and against the appellant, as his surety, for ten dollars damages. There was no judgment against the appellant for the cotton, nor was it adjudged subject to the attachment lien; nor was there any judgment against the appellant requiring the cotton to be returned to the officer, nor for costs of suit. The sheriff, however, indorsed on the claim bond that Thomas S. Fullerton had failed to deliver the cotton to the appellee.

Two executions were sued out against Thomas S. Fullerton and the appellant; one for the value of the cotton, and the other for the damages and costs.

The appellant tendered the amount of the damages and prayed an injunction against the executions. A temporary injunction was allowed; but at the November term of the court, 1872, the injunction was dissolved, and from this judgment of the court an appeal is taken.

We are of opinion that the court erred in dissolving the injunction. There was no judgment against the appellant other than the ten dollars damages. The attachment lien appears to have been abandoned, and the principle decided in the case of Cook *v.* Love, 33 Texas, 487, applies to this case. Without a judgment foreclosing the attachment lien, or a judgment on the return bond against the appellant, he was liable for nothing more than the amount of the judgment for damages rendered against him.

The judgment of the District Court will be reversed and the injunction perpetuated.

Reversed and rendered.