## CULVER v. HAGGARD.     (No. 2151.)

(Court of Civil Appeals of Texas. Amarillo. May 23, 1923. Rehearing Denied June 20, 1923.)

1. **Bills and notes** &#8596;140—**Sale of unissued mineral permit on land, falsely described as in state, held to give defense of failure of consideration and fraud in inception to notes given therefor, preventing recovery on renewal notes.**

Where notes were given for a state permit to prospect on certain public land, which was described as being within the state, but which was in fact in another state, and no permit had been obtained, there was a failure of consideration and fraud in inception, which prevented recovery on notes given in renewal of the original notes.

2. **Contracts** &#8596;220—**Implied condition that the subject-matter is in existence.**

There is an implied condition that the subject-matter of a contract is in existence.

3. **Bills and notes** &#8596;140—**Renewal of notes without knowledge of circumstances held not to constitute a waiver of fraud in securing them.**

Where a purchaser gave notes for a mineral permit which was not issued, but which

was represented to apply to lands in the state, when in fact they were in another state, which fact was not known to him until after he had renewed the original notes, the renewal of the notes did not constitute a waiver of the defense of fraud.

**4. Bills and notes ☞489(2).—Failure to plead grounds of estoppel and waiver of defenses to notes held to prevent their being considered.**

In a suit on notes by the payee against the maker, failure 'of plaintiff to plead part payment by defendant and sale by him of his interest under the contract for which the notes were given, prevented their being considered, as constituting an estoppel and waiver of the defenses of fraud and failure of consideration.

**5. Bills and notes ☞140—Renewal of note whose execution is induced by fraud, waives the fraud. **

Generally the renewal of a note, the execution of which is induced by fraud, waives the fraud, but where the renewal itself is procured by fraud, there is no waiver.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by J. E. Culver against H. H. Haggard. From judgment for defendant, plaintiff appeals. Affirmed.

Weeks, Morrow & Francis, of Wichita, for appellant.

Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, for appellee.

HALL, C. J. The appellant, Culver, sued the appellee upon two promissory notes, one in the sum of $1,012, dated June 11, 1920, and due 45 days after date, the other in the sum of $4,100, of even date, due 90 days after date; both notes providing for interest from date and containing the usual stipulation for attorneys' fees. After a formal declaration upon the two notes, it is further alleged in the petition that on the 22d day of June, 1920, Haggard executed and delivered to Culver a mortgage upon a certain lot in the city of Wichita Falls, for the purpose of securing the payment of said notes. The appellee, by first-amended original answer containing a general demurrer and general denial, alleges, in substance, that the consideration for the note sued upon has wholly failed, in that on the 13th day of February, 1920, he entered into a written contract with J. B. Irwin for the purchase of a certain permit from the state to prospect for oil and gas upon a tract of land which the contract describes by metes and bounds and as being located in Wichita county, Tex. The contract recites in part that Irwin is the owner of a permit to prospect for oil and gas, by the state of Texas, which permit he agreed to transfer to the appellee by two different assignments; one covering the east half and the other the west half of the premises

therein described, for a consideration of $50,000, payable as follows: Ten thousand dollars in cash, and the balance out of the proceeds to be received from the sale of certificates of stock in a company or association to be thereafter organized by Haggard. The contract contains other stipulations and provisions with reference to the organization of the association, the development of the land, and the payment of the balance of the consideration, which we deem unimportant in the consideration of the contentions presented by this appeal. The following material recital, however, is quoted:

"In this connection it is expressly stipulated that, as additional consideration for the obligations to be performed by party of the second part under the terms of this contract, he shall receive in his own right a transfer of the oil and gas prospecting permit as to the east half of the above-described tract of land."

In the amended answer it is further alleged that under the provision for the payment of $10,000 in cash, Irwin was paid $5,000, and that the notes were executed for the remaining $5,000; that Culver was really a party to the contract, entitled to participate in the proceeds and, as plaintiff believed, was a part owner of the permit mentioned therein; that Culver introduced Haggard to a party, said to be J. E. Edison, in whose name the application for the permit was made to the state of Texas. It is alleged that in truth and in fact no such person as J. E. Edison was in existence; that the application was in fact made by J. C. O'Guin, to whom a permit had theretofore been issued and in consequence of which Culver would not be entitled to any permit, because the application was fraudulently made by O'Guin in the name of Edison, a fictitious person. Defendant alleges that no permit was ever issued by the state of Texas to anyone to prospect upon the land described in the contract, and that Culver knew at the time he negotiated the trade with defendant that no permit had ever been issued, and that Irwin was not the owner of a permit as set forth in the contract; by their false and fraudulent representations, they induced the defendant to pay Irwin $5,000 and to execute his notes for the remainder; that at the time said notes were executed he thought the permit had been issued or would be issued immediately, and that, relying upon such understanding, he accepted from Culver, on March 12, 1920, the following writing, signed by the said Culver:

"Received of H. H. Haggard his note for $5,000, made payable to J. E. Culver, being the commission in full on sale of mineral permit to be issued to J. C. O'Guin, on certain land described in contract, J. B. Irwin to H. H. Haggard, in which J. E. Culver sold to H. H. Haggard. I agree to hold H. H. Haggard

harmless from all other parties interested with me in the sale of this land to said H. H. Haggard. This note for $5,000, when paid, will liquidate all claims held by me against J. E. Edison and H. H. Haggard, for commission on said sale."

That portion of the pleading which sets up failure of consideration for the notes is properly verified and the prayer is that O'Guin and Irwin be made parties to the action. The plaintiff filed a supplemental petition, alleging that 'the defendant, Haggard, is estopped to deny the validity of the notes sued upon, by the fact that on the 13th day of February, 1920, he had agreed with plaintiff to assume the payment of $5,000 commissions due plaintiff from Irwin for procuring the sale, whereupon plaintiff had released Irwin from all liability; by the further fact that defendant had failed to make the cash payment, and in lieu thereof had executed and delivered to plaintiff his promissory note for $5,000, which note was subsequently renewed by the execution of the note sued upon; that he is further estopped by the fact that long after the alleged fraudulent representations were made, with full knowledge of the exact status and condition of the property and the falsity of the representations, defendant had executed the notes sued upon and had confirmed the transaction, in so far as plaintiff was concerned. There was a trial to the court without a jury, resulting in a judgment that Culver take nothing, and that Haggard recover his costs.

[1] It will not be necessary to dispose of the several propositions urged separately or in the order presented. There is abundant evidence of fraud in the inception of this transaction to be found throughout the record. According to Haggard's testimony he agreed to purchase the right, under the mineral laws of the state, upon the representation that a permit had been obtained from the state to file upon and develop the land described in his contract. The evidence is uncontroverted that no permit had been obtained, the $1 filing fee and the 10 cents per acre required under the mineral laws of the state had not been paid, and as shown by the testimony of the commissioner of the general land office, no permit could be issued nor could the commissioner have legally received the 10 cents per acre.

[2] There is an implied condition that the subject-matter of the sale is in existence. There was in fact no land as is described in the contract subject to be filed upon under the laws of the state. It has previously been decided by the Supreme Court of the United States, in the Greer County Case (United State v. Texas) 162 U. S. 1, 16 Sup. Ct. 725, 40 L. Ed. 867, and later by the same tribunal in the case of State of Oklahoma v. State of Texas, 256 U. S. 70, 41 Sup. Ct. 420, 65 L. Ed. 833, that the land upon which the right to file was sold to Haggard, if in fact it ex-

isted upon the ground, was not part of the public domain of the state of Texas, but was in Oklahoma. It is inferable from the testimony of the land commissioner, and correspondence between his office and the defendants, that they were aware of the fact, at the time of this sale and at the time the original note was renewed by the notes sued on here-in that the appellants could not secure a permit, and that the land office at Austin would not issue it, even though they complied with the required formalities and conditions precedent. These facts shows a total failure of consideration for the notes sued upon, and, standing alone, warrant and sustain the judgment in Haggard's favor, both upon the issues of fraud and failure of consideration.

[3, 4] The material issue in the case arises upon the appellant's plea of estoppel. It will be observed that the two facts alleged as constituting estoppel are: (1) The execution of the original note after Haggard had ascertained the fact that no permit had been issued; and (2) the execution of the renewal notes sued upon. Other facts relied upon by the appellant as constituting estoppel and waiver of the defenses of fraud and failure of consideration are the payment by Haggard of $100, and the sale by him of his interest, if any, arising under the contract. These matter were not pleaded. As said in Smith v. Roberts (Tex. Civ. App.) 218 S. W. 27:

"The particular acts, etc., relied on as constituting estoppel, should be pleaded with reasonable certainty. Insurance Co. v. Hutchins, 53 Tex. 61, 137 Am. Rep. 750; El Paso Ry. Co. v. Eichel, 130 S. W. 939; Murphy v. Lewis, 198 S. W. 1059."

The rule applicable to this question is thus stated by Jenkins, Justice, in Manes v. J. I. Case T. M. Co. (Tex. Civ. App.) 241 S. W. 757:

"No exception was taken to a plea of waiver in the instant case, for the reason, as appellant contends, that there was no such plea. The sufficiency of a pleading by either a plaintiff or the defendant, which omits facts essential to a recovery or a defense, does not depend upon the same being excepted to. Tel. Co. v. Harris, 105 Tex. 320, 148 S. W. 284; Smith v. Nesbitt (Tex. Civ. App.) 235 S. W. 1107. Nor does the proof of a fact necessary to be proven as a basis of a judgment cure the failure to allege such fact. Evidence as to a fact not alleged can form no proper basis of a judgment"—citing numerous authorities.

In Carson v. Taylor (Tex. Civ. App.) 238 S. W. 261, in discussing the issue of waiver of the fact of fraud in the sale of an oil lease, Dunklin, Justice, said:

"The contentions now under discussion are special defenses to the relief sought by the appellees, and, if appellant desired to avail himself of them, he should have pleaded them. Although the proof recited above might have been available to sustain those special defenses,

the same can avail appellant nothing, in the absence of such pleading. * * * Even though waiver be established by proof, without objection, effect cannot be given to the facts so proven, in the absence of a plea of waiver * * * and the same may be said of the defense of equitable estoppel as distinguished from waiver. Ross v. Moskowitz (Tex. Civ. App.) 95 S. W. 86; Texas Produce Co. v. Turner (Tex. Sup.) 27 S. W. 583; Word v. Marrs, 36 Tex. Civ. App. 637, 83 S. W. 17."

As applicable to this question, it is further said in Henry v. Phillips, 105 Tex. 459, 151 S. W. 533, relating to incompetent testimony:

"When the appellate court comes to apply the law to testimony constituting the facts of the case, it can only base its conclusion upon such testimony as is under the law competent; that which is not competent testimony should be given no probative force. The admission of such testimony is no talisman to give effect to that which is irrelevant and incompetent to sustain or deny a material issue in the case."

It follows from these authorities that the court could not have based a decree for the appellant upon any evidence of estoppel or waiver except as might be shown by the execution of the note and its renewal, subsequent to the time Haggard ascertained that no permit had been issued.

[5] The general rule is that the renewal of a note, the execution of which is induced by fraud, waives the fraud; but, where the renewal itself is procured by fraud, there is no waiver. Haggard testified that before the contract was executed Culver came to him with a little plat showing a 1,000 acres of land, upon which he stated Edison had obtained a permit to prospect for oil and gas; that Culver did not say anything about the land being in the bed of Red river at that time; that he represented it merely "as a lease upon Red river." He further testified:

"It was three days after this contract was signed that I discovered they had no permit. I had already given them a check, and they had cashed the check for $5,000, and then I told Culver that they did not have any permit, and that I could not organize any company on it, and that he ought to get me a permit to protect the commission, and he said, 'Well, they will get it, for J. E. Edison has got a lot of land down there; they will be responsible to you. They are all right.' I took his word for it. Mr. Culver and I have been personal friends and were still at that time."

It appears that even as late as March 12, 1920, when Haggard executed a note for the $5,000, Culver receipted him for it, stating that the note was for commissions on "sale of mineral permit to be issued to J. C. O'Guin." This receipt referred to the land in question. Haggard testified:

"To be plain with you, I did not absolutely know at the time I made the trade that there would have to be a permit. I was taking J. E. Edison's word that this filing would perfect it; in other words, that it was just a question of time when we would get our permit, and that it would come along later. When I made this note I was still expecting them to get the permit. About two weeks later, Mr. Culver and some parties came into my office and told me that Peters was in Austin at that time and had the permit. I said, 'Well, we will get things fixed up in a few days.' When I renewed the notes, Irwin and Peters promised me. * * * Said Irwin and Peters had dropped out of the deal with all of these. * * * I expected them all of the time to go ahead and complete the trade. I certainly did think there was a possibility of getting a permit up to the time they sued me."

It is apparent from this and other testimony that Haggard did not know anything about the requirements of the mineral laws of the state, and that he was relying absolutely upon Culver, Irwin, and Edison, and their assurance that the deal was all right and that the permit would soon be issued. The real fraud in the case consists, not alone in assigning him the mineral rights in public land, to which they claimed to have a permit, but in selling a permit to prospect upon lands which were not in fact in Texas, and upon which, under the conditions, no permit could have been issued. This fact was not known to him until long after he had executed the renewal note. There can be no waiver of fraud without full knowledge of all the circumstances and even where the defrauded party had reason to suspect fraud and does something which may be construed as a waiver, nevertheless—

"The question of waiver * * * is largely one of intent. Hence acts done in affirmance of the contract can amount to a waiver of the fraud only where they are done with full knowledge of the fraud and of all material facts, and with the intention, clearly manifested, of abiding by the contract and waiving all right to recover for the deception. Acts which, although in affirmance of the contract, do not indicate any intention to waive the fraud, cannot be held to operate as a waiver." Kennedy et al. v. Bender, 104 Tex. 149, 136 S. W. 524; Texas Harvester Co. v. Wilson-Whaley Co. (Tex. Civ. App.) 210 S. W. 574; Guinn v. Ames, 36 Tex. Civ. App. 613, 83 S. W. 232.

Haggard testified:

"They represented all the way through that they had all necessary papers and stated in their contract that they had a permit. I took it that included a permit. I would not say positively they said they had a permit. They said they had all of the necessary papers, and then detailed Mr. Morgan to draw up the contract selling a permit. Mr. Culver changed the contract from $5,000 to $10,000. J. B. Irwin had my check then. It was satisfactory to me because I thought we could go right ahead. I didn't know that this slip was coming about the permit. I told him (Culver) that I would give him 90 days to get out the permit, and that I would issue a note payable in 90 days."

In our opinion no intent on the part of Haggard is shown to waive the fraud if it be admitted that he had knowledge of the fraudulent representations as to the permit when the original and renewal note was executed. We think the trial judge was warranted in concluding that Haggard did not have full knowledge of all the facts and circumstances which constituted the fraud, and that he was misled by Culver's assurance that the parties were all right and solvent, and that the permit would be procured.

We think Corpus Juris, vol. 27, pp. 22–25, correctly announces the doctrine applicable to the facts of this case, where it is said:

"It is, however, difficult and perhaps hazardous to formulate or to apply general rules as to what will constitute such a waiver, and each case in which the question arises must be considered and disposed of upon its own special facts; the underlying question being one of intent. * * * But acts in affirmance of the contract amount to waiver of fraud only where they are done with full knowledge of the fraud and all material facts, and with the intention clearly manifested of abiding by the contract and waiving all right to recover for the deception. Acts which, although in affirmance of the contract, do not indicate any intention to waive the fraud, cannot be held to operate as a waiver, nor can acts performed in ignorance of the facts be so held, as for example, payments before the discovery of the fraud, and the fact that plaintiff notifies defendant that the latter must make good his representations or be held responsible therefor, is inconsistent with any such intent to waive the cause of action for fraud. Where plaintiff had fully executed his part of the contracts, acts thereafter done by him in affirmance of the contract and the knowledge of the fraud do not ordinarily amount to a waiver. * * * The rule permitting acts in affirmance of an executed contract to be performed, after discovery of fraud, without waiving an action for deceit, applies also, generally speaking, to a contract which is partly executed at the time of the discovery of the fraud, particularly where further damage would be occasioned to the defrauded party by a rescission, or the past performance is such that the parties cannot safely discontinue or recede."

Haggard obtained nothing whatever by the assignment to him. Having obtained no property or property right he did not transfer any by his assignment to the company, which it was contemplated he should organize and did organize to develop the claim. There was no claim to develop. Even though he had obtained a permit, his transfer in connection with his repeated efforts to get Culver and his assignors to perfect his title to the claim and make good their promises certainly does not manifest an intention to waive the fraud. Under the facts in this record Haggard's assignors could not recover anything further from him in the way of purchase money, nor enforce specific perform-

ance. The commissions were primarily due to Culver from the assignors. The same failure of consideration which Haggard could have successfully asserted against the assignors is available to him in this suit.

We think the judgment should be affirmed upon the issue of fraud, but aside from the question of fraud the record is conclusive, in support of Haggard's plea of failure of consideration.

Finding no reversible error, the judgment is affirmed.