**FOSTER et al. v. SPEARMAN EQUITY EXCH.** (No. 2274.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 22, 1924. Rehearing Denied Nov. 26, 1924.)

1. **Appeal and error** ⚖️719(5) — **Requiring claimants of property levied on under execution to assume burden of proof held not fundamental error.**

That claimants of property were required to assume burden of proof, claimed to be on plaintiff, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 7785, 7786, because property was not in its possession when levied on under writ of execution, return on which did not show from whose possession it was taken, *held* not fundamental error, for which court need search statement of facts, where not regularly assigned.

**2. Appeal and error ☞672—"Fundamental error" defined.**

"Fundamental error" is one apparent of record, such as, being readily seen, lies at base and foundation of proceedings and necessarily affects judgment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fundamental Error.]

**3. Mechanics' liens ☞214—Lien not pleaded in suit wherein only personal judgment was recovered held waived.**

Plaintiff not pleading nor attempting to foreclose materialman's and laborer's lien in original suit, wherein only personal judgment was obtained against defendant, waived lien, and could not assert it in trial of property right as against claimant of property levied on under attachment and execution.

**4. Execution ☞193—Petition and exhibits in original suit held inadmissible on trial of property right set up by claimants.**

Petition and exhibits thereto, in suit in which attachment and execution were levied, held inadmissible on trial of property right asserted by others, as not bearing on issue, and injecting issue, as to materialman's and laborer's lien, set up in affidavits attached to petition.

**5. Execution ☞193—Contract and declarations of trust held admissible on trial of claim of ownership of property levied on.**

Contract for completion of oil well, and declarations of trust creating partnership, on property of which attachment and execution were levied, held admissible on trial of claim of ownership, as supporting plaintiff's evidence that claimants had parted with their title, though there was nothing in plaintiffs' pleadings putting claimants on notice of plaintiffs' claim.

**6. Estoppel ☞110—Estoppel to claim ownership of property levied on must be pleaded.**

Estoppel to claim ownership of property levied on under execution on judgment against another than claimant must be pleaded.

**7. Estoppel ☞87—Statements and representations must have induced action and change of position for worse.**

To create estoppel, alleged statements and representations must have induced action by one claiming estoppel and led him to change his position for worse.

**8. Execution ☞194(3)—Findings as to ownership of property levied on held sustained by evidence.**

Findings that claimants of property, levied on under execution on judgment against partnership, were not owners thereof as individuals, but were only interested therein as members of partnership, held sustained by evidence.

**9. Appeal and error ☞1073(1)—Findings not carried into judgment held immaterial.**

Findings, not carried into judgment, as to statements by partner in absence of copartners and effect thereof in causing sale of goods to partnership, held immaterial when not shown to have caused court to render judgment he did render.

**10. Appeal and error ☞1054(3)—That judge heard incompetent evidence not ground for reversal unless probably influenced thereby.**

That judge, before whom case was tried without jury, heard incompetent evidence, would not require reversal if there was sufficient competent evidence to authorize judgment, unless he was probably influenced by illegal evidence.

**11. Appeal and error ☞1054(3)—Admission of evidence of and findings sustaining liens, in trial of claim to property levied on, held not reversible error.**

Admission of evidence of and finding sustaining materialman's and laborer's liens, in trial of claim of ownership of property levied on under execution, held not ground for reversal of judgment for plaintiff; decision not being shown to have been based on existence of such liens.

**12. Appeal and error ☞1011(1)—Judgment on findings on conflicting testimony and conclusions supported by evidence affirmed.**

Where court's findings in case tried without jury were made on conflicting testimony, and his conclusions are supported by evidence, judgment will be affirmed.

Appeal from District Court, Roberts County; W. R. Ewing, Judge.

Action by the Spearman Equity Exchange against the Snorty-Gobler Company, in which John W. Foster and another filed claim of ownership of property levied on under execution on judgment against defendant. Judgment for plaintiff, and claimants appeal. Affirmed.

Coffee & Holmes, of Miami, and N. Coffee, of Wheeler, for appellants.

Hoover, Hoover & Willis, of Canadian, for appellee.

RANDOLPH, J. The references made by the pleadings of appellants are confusing, in that the parties are not properly styled for some reason; hence we will, for the purpose of identification, refer to the parties as named in the trial court, the Exchange being referred to as plaintiff, and Foster and Null, appellants herein, as claimants. The Spearman Equity Exchange sued the Snorty-Gobler Company, alleging that it was a partnership composed of John W Foster, Dan Vinson, O. E. Null, John Gobin, J. H. Hiner, D. E. Hammett, J. V. Cogdill, and C. A. Null, in the district court of Roberts county, Tex. Service of citation upon said partnership was had upon D. E. Hammett, one of the alleged partners. Judgment by default was rendered only as against the Snorty-Gobler Company.

Soon after the rendition of the judgment, plaintiff caused the issuance of a writ of attachment as against the property of said company, and had it levied on the property in controversy. Plaintiff then issued execution on the judgment and caused it to be levied by the sheriff of Roberts county upon the

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

property theretofore levied on under the writ of attachment. Foster and Null, as claimants, tendered to the sheriff their affidavit, claim of ownership and bond in due form. A trial of the right of property was had before the court, a jury being waived. The trial court rendered judgment in favor of plaintiff, and claimants have appealed from said judgment to this court.

For the purpose of making a necessary statement of the case, we will ignore the effect certain testimony may have had on the mind of the trial court, in order that our discussion of the various questions may be understood. The plaintiff, prior to organization of the Snorty-Gobler Company, had been selling goods to Foster & Null, who were engaged in drilling a well in Roberts county. On the organization of the Snorty-Gobler Company, the plaintiff sold its goods, wares, and merchandise to that company. Their debt not having been paid, plaintiff sued the company upon its account, and also upon certain other accounts which it had taken over by transfer to it. Judgment having been rendered in its favor, and against the Snorty-Gobler Company, plaintiff had the property in controversy levied on under attachment and execution as above stated, whereupon claimants intervened and claimed the property levied on.

Claimants were the owners of an oil and gas lease by virtue of a lease and purchase thereof by them from one Whitsel, and owned and controlled a drilling rig, tools, and casing situated on said lease, which is known as the W. I. Whitsel lease, which lease amounted to and covered 14,000 acres, and the Snorty-Gobler Oil Company was the owner of an interest in said lease by virtue of transfers to the component members of the Snorty-Gobler Company, and by reason of the provisions of the declaration of trust herein later discussed. By assignment from Foster & Null, said company had assigned to it 4,920 acres. This assignment also conveyed all personal property used or obtained in connection with said lease.

Claimants, on the 13th day of October, 1921, made and entered into a contract in writing, as first parties, with the Snorty-Gobler Company, of the second part, and Dan Vinson, John Gobin, L. H. Hiner, D. E. Hammett, and J. V. Cogdill, parties of the third part, which provides as follows:

"That first parties are the owners of certain oil and gas leases, upon which they own and control a drilling rig, tools, and casing, situated in the northwest part of Roberts county, Tex., and known as the W I. Whitsel lease, to the amount of 14,000 acres; and whereas, the second party is the owner of 5,000 acres of said lease obtained from said first parties on certain terms and conditions, said principal condition being to the effect that said second party shall complete the well now drilling on its part of said Whitsel lease; and whereas, said third parties are interested in said well and lease in the matter of skill and labor performed and to be performed on the completion of said well: Now, therefore, said first parties covenant and agree with the second and third parties that they will set apart 2,000 acres of said leases to be selected in checkerboard fashion, and assign and deliver the same to said third parties on completion of said well, or will assign and deliver assignments· on such portions of said 2,000 acres from time to time, if sold or disposed of by said third parties, during the prog· ress of the drilling of said well.

"Second party hereby covenants and agrees that in consideration of skill and labor performed and to be performed on the part of the third parties, it will make, execute, and deliver unto said Dan Vinson, 5,000 shares of its capital stock, to L. H. Hiner 5,000 shares, to John Gobin 5,000 shares, to D. E. Hammett, 5,000 shares, and to J. V. Cogdill 5,000 shares, to be issued and delivered as follows: One-fifth on delivery of this contract, and one-fifth when a depth of 1,000 feet is reached, and one-fifth when 2,000 feet is reached in the well, and the balance on completion of said well to a depth of 3,000 feet, unless a lesser depth shall develop production, in which event any remaining stock or shares shall issue as above provided.

"In consideration of all of which said second and third parties hereby covenant and agree with first parties that they will proceed without delay to drill and finish the aforesaid well to a depth of 3,000 feet, unless oil or gas shall be encountered at a lesser depth, furnishing all necessary skill and labor required in furnishing funds, material, and labor for such completion, saving the said Foster and Null, first parties, from further expense on said well. Said first parties agree and covenant with second and third parties that they will set aside the remaining 12,000 acres of the aforesaid leases for the purpose of defraying the expenses incident to the completion of said well, to be held by the said first parties, or so much thereof as may be necessary in the following manner, to wit:

"Said second and third parties may bargain and sell assignments of leases, from said 12,000 acres, and the proceeds thereof to be divided 65 per cent. to the second party, and 35 per cent. to the first parties, until the sum of $20,-000 shall be paid to first parties, and after which the said proceeds shall be divided 50 per cent. to second party and 50 per cent. to first parties; provided, that upon the payment of $15,000 to said first parties from said funds so derived, the ownership of the rig, tools, and casing on said lease shall pass to and become the property of the first and third parties jointly: Provided further that the necessary traveling expenses of agents and expenses incident to the sale of acreage shall be paid before any division of funds shall be made as above provided for.

"In consideration of the improvement and work of drilling on said acreage assigned to said second party by first parties, the above and foregoing division of funds shall be made in the same ratio of funds derived from the sale of shares in the second party company. It is further agreed and understood by and between all parties hereto, that in the event any portion or part of the aforesaid 12,000 acres remain unsold at the time of completion of the well aforesaid, the same shall remain and be the

property of the first parties, one-half, and of the third parties, one-half."

The lease from Whitsel to John W. Foster and O. E. Null dated May 5, 1920, and covering the land upon which the property in controversy was located, was for a period of five years, and was conditioned upon the drilling of a well for oil or gas, with the right of assignment on the part of lessees, and that the covenants in regard to drilling should follow the assignments. The following "declarations of trust" were in evidence.

The first of these provided for three trustees with N. W Nicker, trustor, John W. Foster, Perry J. Morris, and O. E. Null, trustees, dated August 30, 1920, and otherwise being identical to the following described "declaration of trust." The second declaration of trust, dated the 12th of October, 1921, by and between C. I. Null, trustor, and John W. Foster, Dan Vinson, O. E. Null, John Gobin, L. H. Hiner, D. E. Hammett, and J. V. Cogdill, together with their successors therein designated "trustees." We here quote the second paragraph of said declaration of trust:

"Witnesseth, That whereas, the trustor, for the purpose of creating a trust fund and trust estate, has deposited with and delivered to the trustees under the designation of the Snorty-Gobler Company, the sum of $2,000.00. * * *"

The other portions of such declaration of trust are too lengthy to place in this opinion. Suffice it to say that this instrument by its terms and provisions comes within the rule laid down by this court, holding the relationships formed by such instrument to be partnerships. Harvey Co. v. Braden (Tex. Civ. App.) 260 S. W. 655. It was signed and accepted by the parties named immediately above. There is also an assignment of lease dated 5th day of May, 1920, by Foster-Null Oil Company to the Snorty-Gobler Oil Company, signed by Foster-Null Oil Company, by O. E. Null, president, attested by John W. Foster, secretary. This assignment of lease covers the land upon which the property in controversy is located, and contains the following clause:

"Together with all personal property used or obtained in connection therewith to the Snorty-Gobler Oil Company, its successors or assigns."

[1] Claimants, before proceeding with the discussion of their regularly assigned propositions of error, present the following fundamental error: That their contest is based on the fact that claimants were required by the court to assume the burden of proof in the trial of the case, whereas, as a matter of law, the burden was placed on the plaintiff for the reason that the property was not in the possession of the plaintiff when levied on under the writ, the return on the writ not showing from whose possession the property was taken. The property had been levied on by the sheriff under a writ of attachment, and his return thereon did not show from whose possession it was taken, but did show that it was levied on as the property of the Snorty-Gobler Company.

Article 7785, Vernon's Sayles' Civil Statutes, provides:

"In all cases arising under this [statute], if the property was taken from the possession of the claimant, the burden of proof shall be on the plaintiff."

Article 7786 provides:

"If it was taken from the possession of the defendant in such writ, or any other person than the claimant, the burden of proof shall be on the claimant."

The execution in evidence does not require it to be levied on any specific property, and the statutes regulating the matter of the sheriff's return do not specifically require the sheriff to show in his return from whose possession the property was taken.

[2] But the error presented cannot be considered by us because it is not fundamental error. We are not required to search the statement of facts to ascertain whether or not there was error, the error not having beeing regularly assigned. A fundamental error is one that is apparent of record: such error, as being readily seen, lies at the base and foundation of the proceedings, and affects the judgment necessarily. Oar v. Davis, 105 Tex. 484, 151 S. W. 794, and authorities therein cited.

[3] Claimants' first proposition relates to the paragraph in plaintiff's petition setting up a materialman's and laborer's lien, and charges error because same shows on its face that if plaintiff ever had any lien or liens against the property, it voluntarily abandoned same by pursuing and electing to pursue their remedy of subjecting the property to their judgment under writ of attachment and execution, and said act of abandonment estops plaintiff from now claiming and enforcing such liens, and that they do not allege that same are now in existence.

Plaintiff in its petition in the original suit, under which it took judgment, does not plead such liens, nor does it attempt to foreclose any such liens. The judgment is only a personal judgment against the defendant Snorty-Gobler Company. By its failure to assert its materialman's and laborer's liens in the original suit and judgment therein, plaintiff waived its lien and the trial court should have sustained claimants' exception to paragraph of plaintiff's petition in this suit. Bond v. Carter (Tex. Civ. App.) 73 S. W. 45; Wise v. Old, 57 Tex. 514; Cook v Love, 33 Tex. 487; Gentry v. Lockett, 37 Tex. 503; Toland v. Swearingen, 39 Tex. 447. We therefore sustain this proposition.

[4] Claimants' proposition No. 2 complains of the trial court permitting plaintiff to in-

troduce in evidence its petition in the original suit and the exhibits thereto attached, because the contents in the petition in that suit, or any matter leading to the judgment, is not in issue in this cause, nor a controverted matter. The evidence complained of could have no material bearing upon the issues in this suit for the trial of the right of property, the issue herein being whether or not the claimants were the owners of the property in controversy, and any matter preceding the judgment and leading up to the rendition of the judgment could have no bearing on that issue. Again, such petition, while containing no pleading seeking foreclosure of the lien, had attached thereto the accounts sued on and affidavits setting up the liens above named, and injected into the case an issue not pleaded by plaintiff. The objection should have been sustained.

[5] The claimants' third proposition presents the question that the trial court erred in admitting in evidence the instrument designated as the "contract" between J. W. Foster, Perry J. Morris, and O. E. Null, trustees, and N. M. Ricker, trustor, because there is nothing in plaintiff's pleadings putting the claimants upon notice of plaintiff's claim to the property in controversy. The objection cannot be sustained. The plaintiff had levied upon the property in controversy The claimants set up and claimed to be the owners of the property in controversy. It devolved upon claimants to establish their ownership, and having come into court and testified that they had never sold the property and still owned it, and the instrument tendered in evidence being a link in the written testimony establishing the title to the land upon which the property in controversy was located, supports plaintiff's evidence to show that Null & Foster had parted with their title to the property in controversy, and it was not required in doing so, that plaintiff serve any notice upon claimants as to the purpose of the introduction of the evidence. This "contract" would be admissible, if for no other purpose, because of the statement contained in it that the trustees, who are shown by the evidence to include the claimants herein, are identical with the parties composing the Snorty-Gobler Company.

It is evident that the appellants, by their proposition No. 4 and the statements and arguments under proposition No. 3, intended to bring before us their objections to the admission in evidence of each and both of the instruments, designated "declarations of trust," and we will proceed to so consider same. The error in the admission of such testimony is alleged to be because the contents of same is foreign to any issue in this case. There are no pleadings to justify the introduction of such testimony. If the testimony was admissible, it was admissible to controvert the claim of ownership by claimants. We think that such is the force of this testimony.

The assignment of the lease from Whitsel to Foster & Null, May 5, 1920, to the real estate upon which the property was situated, placed the title in them to such property. The assignment from John W. Foster and O. E. Null to the Foster-Null Oil Company, dated August 30, 1920, required said Foster-Null Oil Company to comply with the covenants in the lease in regard to the drilling of the first well, and conveyed 240 acres of section 37, upon which the property in controversy was located. But the assignment from Foster-Null Oil Company to the Snorty-Gobler Oil Company, "together with all personal property used or obtained in connection therewith" vested title in the Snorty-Gobler Oil Company of the interest held by Foster-Null Oil Company. By the contract as above set forth, Foster & Null entered into an agreement with the Snorty-Gobler Company and with Dan Vinson, John Gobin, L. H. Hiner, D. E. Hammett, and J. V. Cogdill to complete a certain well begun by them. This contract also recites the original Whitsel lease, and says that Foster & Null are the owners of certain oil and gas leases upon which they own and control a drilling rig, tools, and casing, which lease is known as the H. I. Whitsel lease, and under the further terms providing for the continuance of the drilling of the well by the Snorty-Gobler Company, which is composed of Gobin, Hiner, Hammett, Cogdill, O. E. Null, and J. W Foster, and provides that the last-named parties will proceed without delay to drill and finish their aforesaid well. The claimants' contention that the Snorty-Gobler Company and the last-named parties are separate and distinct is without force. The declarations of trust complained of are executed by and between the same individuals, except C. A. Null, trustor, and recognize that they constitute the Snorty-Gobler Company. The evidence shows that Foster & Null had begun the work on the well, and that the Snorty-Gobler Company, composed as aforesaid, went on the ground, took charge of the premises, and attempted to complete the well.

These instruments, therefore, were admissible in evidence upon the issue as to whether or not the claimants had parted with the title to the property in controversy, and to show that they were not the owners of such property. While the property was not conveyed under these instruments, yet, under the above designated "contract" and assignments taken in connection with the "declarations of trust," it was for the trial court to say whether or not they conveyed the property in controversy to the Snorty-Gobler Company and for the purpose of showing the relationship of the parties in the conduct of the drilling of the well.

Propositions Nos. 5 and 6 present error in

the admission of the testimony of R. L. McClellan and J. L. Hays, wherein the witnesses testified as to statements made by John Gobin as to the ownership to the property in controversy. Gobin is shown to have been a partner in the Snorty-Gobler Oil Company, and manager of the drilling operations, and such statements testified to by him were made in the absence of claimants, and are not shown to have been accepted or ratified as true by claimants.

Plaintiff nowhere pleads that the credit extended by it to the Snorty-Gobler Company was extended upon the faith induced by the apparent ownership of the property of the Snorty-Gobler Company authorized by claimants, neither have they pleaded the extension of the credit as having been made in good faith to said company by reason of the representations made by Gobin as the duly authorized agent, and in no manner does it plead estoppel by reason of the acts and conduct of claimants or their duly authorized agents.

[6] Where estoppel is relied on to defeat claimants in their position of ownership, such estoppel must have been pleaded. Rail v. City National Bank, 3 Tex. Civ. App. 557, 22 S. W. 865.

[7] In order to create an estoppel, it is essential that the alleged statements and representations charged to have been made were not only believed, but they must have induced action on the part of one claiming the privilege of estoppel, and he must be led thereby to change his position for the worse. And this must have been pleaded. Lewis v. Brown, 39 Tex. Civ. App. 139, 87 S. W. 704; Ross v. Moskowitz (Tex. Civ. App.) 95 S. W. 86; Carson v. Taylor (Tex. Civ. App.) 238 S. W. 264; Culver v. Haggard (Tex. Civ. App.) 252 S. W. 1094; Henry v. Phillips, 105 Tex. 459, 151 S. W. 533; Harvey Co., Limited, v. Bradent (Tex. Civ. App.) 260 S. W. 659.

[8] Propositions Nos. 8 to 18, inclusive, assail the court's findings of fact and conclusions of law, but we deem it necessary only to make statements of certain issues that practically result in the decision of the case. While some of the court's findings are based upon evidence held by us to be inadmissible, yet the findings that relate to the ownership, and also those directly on that issue, are sustained by the evidence.

The trial court's finding upon the existence of the materialman's lien, and the finding upon testimony of McClellan and Hays, cannot, within the rule laid down by us under our holding to be now discussed, become material. The court's findings that John W. Foster and O. E. Null were partners in the Snorty-Gobler Company, that the personal property herein in controversy was conveyed by Foster & Null to Snorty-Gobler Company, that the Snorty-Gobler Company was engaged in drilling the well on the lease known as the Whitsel lease, and that Foster & Null, claimants, were not the owners of such property as individuals, but that the only interest they had in it was as members of the Snorty-Gobler Company, and partners therein, are abundantly sustained by the evidence.

[9] Neither is the trial court's finding as to the statements of Gobin, and the effect of such statements in causing plaintiff to sell goods to Snorty-Gobler Company, carried forward into the judgment. Such finding did not enter into the question of ownership, but of estoppel. The judgment making no pronouncement of such finding as a basis of judgment, there is no showing that these findings caused the court to render the personal judgment he did render against Null & Foster.

Appellee insists that the evidence as a whole amply supports the judgment of the court, and that where any one of the findings are not sufficiently supported by the evidence, it is immaterial if the court rendered the proper judgment under the evidence in and the law of the case. In addition to the recitals in the instruments properly introduced in evidence, as indicated above in this opinion, which sustained the court in such finding, and which furnished a basis for his judgment, we give a brief synopsis of other evidence, to wit:

John W. Foster, one of the claimants, testified that the property in controversy was purchased by him and O. E. Null, was placed on section 37 in the latter part of 1919, 1920, and 1921, for the purpose of drilling for oil and gas; that he was one of the parties who executed a declaration of trust under the name of Snorty-Gobler Oil Company, for the purpose, among other things, of drilling an oil well upon the section of land mentioned; that, from the time of placing the material and drilling outfit on the ground, Null and he prosecuted the drilling of a well with said tools and equipment, employing one O. E. Gaston as head driller; that supplies were furnished by Null and himself. After that date the drilling of the well was done by Dan Vinson, J. V. Cogdill, D. E. Hammett, John Gobin, and L. H. Hiner, under a contract with them to complete the well for acreage. They were permitted to sell acreage from the lease and have part of the funds realized from the sale to be used to help pay expenses. That the tools and equipment owned by himself and Null and on the ground, were loaned to Vinson et al to drill a well, but the Snorty-Gobler Company had nothing to do with the drilling of the well, and no part of this machinery was ever turned over to the Snorty-Gobler Oil Company. That the Snorty-Gobler Oil Company was not to have any debts, as the company had no part in drilling this well, and after the well was completed they were to be hold-

ers of the 5,000 acres assigned to them, and no one was authorized to contract any debts for the Snorty-Gobler Oil Company. As far as the witness knew, the names of the shareholders in the Snorty-Gobler Oil Company were Dan Vinson, J. V. Cogdill, D. E. Hammett, L. H. Hiner, John Gobin, O. E. Null, and John W. Foster. Gobin was manager of the Snorty-Gobler Oil Company but had no authority to create debts for said company, for the company was not a driller or doing any business to create debts. Dan Vinson, John Gobin, L H. Hiner, D. E. Hammett and J. V. Cogdill were out there drilling this well or having something to do with it, and are the same parties named in the declaration of trust.

O. E. Null, one of the claimants, testified that the well-drilling property, the rig and such other things as they had for the purpose of drilling the well, was turned over to Vinson, Hiner, Cogdill, and Hammett, named above, but was just loaned to them. The following is taken from the cross-examination of this witness:

"Q. Do you claim before this court that the Snorty-Gobler Oil Company was not doing a thing up there about this well at all, and wouldn't have anything to do with it? A. I don't know that I said that.

"Q. Well, what did you say about it—did they have anything to do with it or not? A. No, sir; I think not; the drilling was handled by these five men, though they were named in the formation of the Snorty-Gobler Company. Gobin and all these men that were named in that contract forming the Snorty-Gobler Company were out there, and practically as soon as the company was formed these men went right up there and took charge of the well."

[10] As the case was tried before the judge, without the intervention of a jury, his having heard incompetent evidence, would not require a reversal of the judgment, if there is sufficient competent evidence to authorize its rendition, unless it should appear that the judge was probably influenced in his judgment by the illegal evidence heard by him. Roach v. Crume (Tex. Civ. App.) 41 S. W. 86; Moore v. Kennedy, 81 Tex. 147, 16 S. W. 740. There must be some showing that the improper evidence affected the decision. Lawther Grain Co. v. Winniford (Tex. Com. App.) 249 S. W. 198.

[11] It is true that the trial court admitted the evidence establishing the materialman's and laborer's liens and it is also true that in his findings of fact he sustains such liens, but such evidence was immaterial, and could not affect the controlling issue in the case; that is, the question of the ownership of the property by claimants. It does not matter whether or not the plaintiff had liens, valid and subsisting. If the title to the property had not passed out of claimants, such liens would have been inoperative as to them,

because their alleged ownership began prior to the attaching of the liens. Again, the decision of the trial court in no manner being shown to have been based upon the existence of such liens, the issue is immaterial. The trial court did not carry the liens into the judgment, and did not order any foreclosure of same; hence it does not appear that his decision upon the controlling question was influenced by the facts as found by him.

[12] It appearing from the evidence that the court made his findings upon conflict of testimony, and that his conclusion that the claimants were not the owners of the property in controversy is abundantly supported by the evidence, we affirm the judgment of the trial court.